# IN THE SUPREME COURT OF TEXAS

════════════
No. 16-0353
════════════

BENEDICT G. WENSKE AND ELIZABETH WENSKE, PETITIONERS,

v.

STEVE EALY AND DEBORAH EALY, RESPONDENTS

═══════════════════════════════════════════════════════════
ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE THIRTEENTH DISTRICT OF TEXAS
═══════════════════════════════════════════════════════════

**Argued March 22, 2017**

JUSTICE BROWN delivered the opinion of the Court, in which CHIEF JUSTICE HECHT, JUSTICE GREEN, JUSTICE JOHNSON, and JUSTICE GUZMAN joined.

JUSTICE BOYD filed a dissenting opinion, in which JUSTICE WILLETT, JUSTICE LEHRMANN, and JUSTICE DEVINE joined.

In this case we construe a deed that conveyed a mineral estate and the surface above it. Doing so allows us to reinforce a trend in our mineral-deed jurisprudence. Over the past several decades, we have incrementally cast off rigid, mechanical rules of deed construction. We have warned against quick resort to these default or arbitrary rules. And we do so again today by reaffirming the paramount importance of ascertaining and effectuating the parties' intent. We determine that intent by conducting a careful and detailed examination of a deed in its entirety, rather than applying some default rule that appears nowhere in the deed's text.

The specific issue in this case is whether the language of the deed passed the entire burden of an outstanding non-participating royalty interest to the grantees or whether the NPRI

proportionately burdened the grantor's reserved interest.[1] The trial court concluded that the deed

burdened both parties with an outstanding NPRI. And it ruled that the parties must share the burden

of the NPRI in proportion to their respective fractional mineral interests. The court of appeals

affirmed, evaluating the case in light of our holding in *Bass v. Harper*, 441 S.W.2d 825 (Tex. 1969),

and reasoning that *Bass* did not control. We affirm the court of appeals' judgment, though we clarify

that the parties' intent, not *Bass* or default rules, decides the case.

## I

In 1988, Benedict and Elizabeth Wenske purchased a 55-acre mineral estate from Marian

Vyvjala, Margie Novak, and others. From that 55-acre conveyance, Vyvjala and Novak each reserved

a 1/8th NPRI, resulting in a combined 1/4th NPRI over all of the oil, gas, and other minerals

produced from the property for a period of 25 years (Vyvjala NPRI).

In 2003, the Wenskes sold the property to Steve and Deborah Ealy by warranty deed. The

deed purported to grant all of the surface estate to the Ealys and, by operation of a reservation,

effectively divided the mineral estate between the parties: 3/8ths reserved to the Wenskes and 5/8ths

conveyed to the Ealys. The relevant parts of the deed are:

Reservations from Conveyance:

For Grantor and Grantor's heirs, successors, and assigns forever, a reservation of an
undivided 3/8ths of all oil, gas, and other minerals in and under and that may be
produced from the Property. If the mineral estate is subject to existing production or

---

[1] "A non-participating royalty interest is 'an interest in the gross production of oil, gas, and other minerals carved out of the mineral fee estate as a free royalty, which does not carry with it the right to participate in the execution of, the [b]onus payable for, or the delay rentals to accrue under oil, gas, and mineral leases executed by the owner of the mineral fee estate.'" *KCM Fin. LLC v. Bradshaw*, 457 S.W.3d 70, 75 (Tex. 2015) (quoting Lee Jones, Jr., *Non-Participating Royalty*, 26 TEX. L. REV. 569, 569 (1948) (footnote omitted)).

2

an existing lease, the production, the lease, and the benefits from it are allocated in proportion to ownership in the mineral estate.[2]

Exceptions to Conveyance and Warranty:

. . .

Undivided one-fourth (1/4) interest in all of the oil, gas and other minerals in and under the herein described property, reserved by Marian Vyvjala, et al for a term of twenty-five (25) years in instrument recorded in Volume 400, Page 590 of the Deed Records of Lavaca County, Texas, together with all rights, express or implied, in and to the property herein described arising out of or connected with said interest and reservation, reference to which instrument is here made for all purposes.

. . .

Grantor, for the Consideration and subject to the Reservations from Conveyance and the Exceptions to Conveyance and Warranty, grants, sells, and conveys to Grantee the Property, together with all and singular the rights and appurtenances thereto in any way belonging, to have and to hold it to Grantee and Grantee's heirs, successors, and assigns forever. Grantor binds Grantor and Grantor's heirs and successors to warrant and forever defend all and singular the Property to Grantee . . . except as to the Reservations from Conveyance and the Exceptions to Conveyance and Warranty.

In 2011, the Wenskes and Ealys entered into oil-and-gas leases that provided for a royalty on production. In 2013, a dispute arose concerning from whose share of the royalties the 1/4th Vyvjala NPRI would come. The Wenskes sought a declaratory judgment that their 3/8ths interest was unburdened by the NPRI. The Ealys counter claimed and sought a declaratory judgment that the NPRI burdened both the Ealys' and the Wenskes' mineral estates in proportion to each party's fractional interest in the minerals.

---

[2] The deed's description of Vyvjala's interest apparently mischaracterized it as a mineral interest. A prior deed, expressly referred to in this deed, makes clear Vyvjala's actual interest is a royalty interest. Neither the Wenskes nor the Ealys argue that Vyvjala has anything other than a royalty interest.

3

The trial court granted summary judgment for the Ealys, concluding that they and the Wenskes must share the NPRI's burden in proportion to their interests. The court of appeals affirmed. ___ S.W.3d ___, ___ (Tex. App.—Corpus Christi–Edinburg 2016) (mem. op.). We granted the Wenskes' petition for review.

**II**

"The construction of an unambiguous deed is a question of law for the court." *Luckel v. White*, 819 S.W.2d 459, 461 (Tex. 1991). When construing an unambiguous deed, our primary duty is to ascertain the intent of the parties from all of the language within the four corners of the deed. *Id.* The parties' intent, "when ascertained, prevails over arbitrary rules." *Id.* at 462 (quoting *Harris v. Windsor*, 294 S.W.2d 798, 800 (Tex. 1956)). In *Luckel*, we rejected mechanical rules of construction, such as giving priority to certain clauses over others, or requiring the use of so-called "magic words." *See Concord Oil Co. v. Pennzoil Expl. & Prod. Co.*, 966 S.W.2d 451, 465 (Tex. 1998) (citing *Luckel*, 819 S.W.2d at 462).

Here, neither party contends the deed is ambiguous, and we agree. *See Heritage Res., Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex. 1996) (explaining that ambiguity is a question of law for the court). So we begin by attempting to ascertain the parties' intent as expressed in the language of the deed. And generally, if we can ascertain their intent, that should also be the end of our analysis.

The Wenskes argue, however, that our treatment of a "subject-to" clause in *Bass v. Harper* should control this case. They contend we must give the same effect to the subject-to clause in the

deed here as we gave the subject-to clause in *Bass*. So we take a brief detour to explain why *Bass* does not compel a specific outcome in this case.

**A**

In *Bass v. Harper*, Thomas Bass owned the surface of a tract of land, the executive rights, and 8/14ths of the 1/8th royalty under the existing lease. 441 S.W.2d at 825. The other 6/14ths of the 1/8th royalty had been reserved by third parties. *Id.* Bass executed a warranty deed granting an undivided 1/2 interest in the minerals to a grantee. *Id.* at 826. A subject-to clause in the deed excepted from the conveyance various mineral interests totaling the other 6/14ths of the royalty. *Id.*

A dispute arose over royalty payments and Bass argued that (1) the deed conveyed half of his entire estate and (2) that half (7/14ths) was made subject to the outstanding 6/14ths royalty. *Id.* at 825. In other words, the 7/14ths was burdened with, or subject to, all of the outstanding royalty interests. *Id.* This, in effect, left the grantee with just a 1/14th interest. *Id.* The grantee's successor argued that although the grant was for an undivided one-half interest in the mineral estate (7/14ths), Bass meant to convey a half of the interest *he owned*, that is, 1/2 of Bass's 8/14ths royalty (4/14ths). *Id.* He argued that the subject-to clause was included merely to protect Bass from a warranty claim based on the outstanding interests. *Id.*

We agreed with Bass, holding that the deed's granting clause conveyed 1/2 of the 1/8 royalty because it contained no language limiting the grant to 1/2 of the interest Bass owned. *Id.* at 827; *see also Averyt v. Grande, Inc.*, 717 S.W.2d 891, 894 (Tex. 1986) (interpreting *Bass*). We further held that the grant of 7/14ths of the royalty was subject to the exception of 6/14ths, leaving the grantee with 1/14th of the royalty. *Bass*, 441 S.W.2d at 828. We reasoned that the exception of 6/14ths of

5

the royalty in the subject-to clause was "tied specifically to the grant." *Id.* at 827. Therefore, it operated to limit the estate granted and not simply to protect Bass against warranty claims. *Id*. We rendered judgment for Bass "under the specific wording of the instrument" at issue. *Id.* at 828.

Our reasoning in *Bass* should remain limited to the specific wording of the instrument in that case. Our analysis relied, in large part, on the location of the subject-to clause in the deed. *Id.* at 827 ("The instrument in question does not relate the outstanding mineral royalty interests to the warranty. It could have done so, but it is tied specifically to the grant."). We have said for decades, even before *Bass*, that:

> The strictness of ancient rules for construing deeds and like instruments has been relaxed, and it is now well settled that all parts of the instrument will be given effect when possible, and the intention of the parties will be gathered from the whole without reference to matters of mere form, relative position of descriptions, technicalities, or arbitrary rules.

*Sun Oil Co. v. Burns*, 84 S.W.2d 442, 444 (Tex. 1935).

Since *Bass*, our rules for deed construction have moved even more decisively toward (1) a focus on the intent of the parties, expressed by the language within the four corners of the deed, and (2) harmonizing all parts of an instrument, even if particular parts appear contradictory or inconsistent. *See Luckel*, 819 S.W.2d at 462; *see also Anadarko Petroleum Corp. v. Thompson*, 94 S.W.3d 550, 554 (Tex. 2002). As we recently reaffirmed, "[i]ntent must be determined by a careful and detailed examination of the document in its entirety, rather than by application of mechanical rules of construction that offer certainty at the expense of effectuating intent." *Hysaw v. Dawkins*, 483 S.W.3d 1, 16 (Tex. 2016).

6

We do not reject *Bass* as mistaken jurisprudence and we do not overrule it. But today, in light of our evolving mineral-deed-construction jurisprudence, courts and practitioners should view *Bass* as limited to the specific language at issue in that case.

**B**

Having explained *Bass*'s inapplicability, we turn to the deed language in this case. The court of appeals correctly stated that its primary duty was "to ascertain the intent of the parties within the four corners of the deed." ___ S.W.3d at ___ (citing *Altman v. Blake*, 712 S.W.2d 117, 118 (Tex. 1986)). Yet the court was quick to turn to a "default rule" to decide the case. *Id.* at ___. It held that because the deed provided no guidance on how to allocate the burden of the Vyvjala NPRI, the alleged "default rule"[3] from *Pich v. Lankford* should apply: "Ordinarily the royalty interest . . . would be carved proportionately from the two mineral ownerships . . . ." *Id.* (quoting *Pich v. Lankford*, 302 S.W.2d 645, 650 (Tex. 1957)). For that reason, and others we need not address here, the court affirmed.

We disagree with the court of appeals' analysis. The parties' intent, when ascertainable, prevails over arbitrary rules. *Luckel*, 819 S.W.2d at 462. And we can ascertain the parties' intent here by careful examination of the entire deed. *See Hysaw*, 483 S.W.3d at 16. Applying default rules or other mechanical rules of construction to determine the deed's meaning is, therefore, both unnecessary and improper. *See id.*; *Luckel*, 819 S.W.2d at 462.

---

[3] The Wenskes argue that this rule from *Pich* is dicta and should be ignored. *See Pich v. Lankford*, 302 S.W.2d 645, 646–50 (Tex. 1957). As set out below, we have no need to expressly interpret or apply *Pich* today. We therefore express no opinion about the vitality of this part of the *Pich* decision.

7

The Wenskes granted the estate "subject to the Reservations from Conveyance and the Exceptions to Conveyance and Warranty." Under the heading "Reservations from Conveyance," they reserved "an undivided 3/8ths of all oil, gas, and other minerals in and under and that may be produced from the Property." Under the heading "Exceptions to Conveyance and Warranty," the Wenskes identified an "[u]ndivided one-fourth (1/4) interest in all of the oil, gas and other minerals in and under the herein described property, reserved by Marian Vyvjala, et al for a term of twenty-five (25) years in instrument recorded in [county deed records] . . . reference to which instrument is here made for all purposes."

According to the Wenskes, the deed conveyed 5/8ths of the mineral estate and the entire burden of the 1/4th Vyvjala NPRI, in effect leaving the Ealys with only 3/8ths of the production royalty. That is, 8/8ths minus 3/8ths reserved to the Wenskes minus the 2/8ths NPRI. According to the Ealys, the Wenskes conveyed the minerals and effectively reserved 3/8ths to themselves, but both the Wenskes' and Ealys' fractional interests are proportionally burdened by the outstanding 1/4th NPRI (e.g., the Wenskes must satisfy 3/8ths of the 1/4th NPRI and the Ealys must satisfy 5/8ths of the 1/4th NPRI).

Both parties present a wide range of arguments, but they both understand that the construction of this deed turns, in large part, on the meaning of the subject-to clause. That is, the precise effect of this conveyance being "subject to the Reservations from Conveyance and the Exceptions to Conveyance and Warranty" in the deed.

"The words 'subject to,' used in their ordinary sense, mean subordinate to, subservient to or limited by." *Kokernot v. Caldwell*, 231 S.W.2d 528, 531 (Tex. Civ. App.—Dallas 1950, writ ref'd)

8

(citations and quotation marks omitted). And although the subject-to clause in *Bass* was tied to the grant and not the warranty, in general, the principal function of a subject-to clause in a deed is to protect a grantor against a claim for breach of warranty when some mineral interest is already outstanding. *See Walker v. Foss*, 930 S.W.2d 701, 706 (Tex. App.—San Antonio 1996, no writ); Ernest E. Smith, *The "Subject To" Clause*, 30 ROCKY MTN. MIN. L. INST. § 15.01 (1984); *see also* RICHARD W. HEMINGWAY, THE LAW OF OIL AND GAS § 9.1 (3d ed. 1991) (collecting cases from multiple jurisdictions to that effect).

But "the beguiling simplicity of the 'subject to' clause has often misled conveyancers into using it for quite different purposes." Smith, *"Subject To" Clause* at § 15.01. "As a long series of cases has made painfully clear[, use of a subject-to] clause to perform some function other than a limitation on the deed warranty is likely to introduce an element of ambiguity into the deed which may be resolved only through litigation." *Id.*

We recognize, as has Professor Smith, that subject-to clauses are widely used for other purposes. In *Averyt v. Grande*, for example, we held "that a 'subject to' clause that excepts fractional mineral interests from lands and minerals conveyed does not form part of the description of the land[,]" but does limit the estate granted and warranted. 717 S.W.2d at 894. Subject-to clauses are also used when the property to be conveyed is subject to an outstanding mineral lease and that lease is to be maintained after the conveyance. *See, e.g.*, *Hoffman v. Magnolia Petroleum Co.*, 273 S.W. 828, 829 (Tex. Comm'n App. 1925, holding approved, judgm't adopted).

Here, no question exists that the interest granted to the Ealys was "limited by" or "subservient to" the Vyvjala NPRI. *See Kokernot*, 231 S.W.2d at 531. But in this transaction between individual

9

citizens for 55 acres in Lavaca County, we think "[t]he best construction is that which is made by viewing the subject of the contract as the mass of mankind would view it; for . . . it may be safely assumed that such was the aspect in which the parties themselves viewed it." *Dunham v. Kirkpatrick*, 101 Pa. 36, 43 (1882) (citation omitted). Giving the deed's words their plain meaning, reading it in its entirety, and harmonizing all of its parts, we cannot construe it to say the parties intended the Ealys' interest to be the *sole* interest subject to the NPRI. *See id.*; *Hysaw*, 483 S.W.3d at 16; *see also In re Office of the Att'y Gen. of Tex.,* 456 S.W.3d 153, 155–56 (Tex. 2015) ("Given the enormous power of context to transform the meaning of language,  courts should resist rulings anchored in hyper-technical readings of isolated words or phrases. The import of language, plain or not, must be drawn from the surrounding context . . . ."). And, declining to apply mechanical rules or require the use of "magic words," we will not read such an intent into this document. *See Luckel*, 819 S.W.2d at 462.

The principles of oil-and-gas law inform our interpretation. Generally, "the conveyance of an interest in the minerals in place carries with it by operation of law the right to a corresponding interest in the royalty." *Wood v. Sims*, 273 S.W.2d 617, 621 (Tex. 1954); *see also Benge v. Scharbauer*, 259 S.W.2d 166, 169 (Tex. 1953) ("The fractional part of the bonuses, rentals and royalties that one is to receive under a mineral lease usually or normally is the same as his fractional mineral interest . . . ."). As the dissent correctly notes, this means when a deed conveys or reserves a 3/8ths interest in the minerals, the nature of that interest, by operation of law, includes the right to receive 3/8ths of the royalties. *See Wood*, 273 S.W.2d at 621. And under the same principle, a severed fraction of the royalty interest—like the Vyvjala NPRI—generally would burden the entire

10

mineral estate because it necessarily limits the royalty interests attached to the underlying mineral interests. *See post* at __.

But that principle does not compel an outcome in this case. Parties are free to contract for whatever division of the interests suits them. Their intent, as expressed in the deed, controls. If they want their agreement to operate differently from this basic principle of mineral conveyance, this Court has said they should "plainly and in a formal way express that intention." *Benge*, 259 S.W.2d at 169. We see no expression of such intent, plain or not, in the deed here.

Further, the exceptions to conveyance and exceptions to warranty are combined into one clause in this deed ("Exceptions to Conveyance and Warranty"). That combined clause, read with the subject-to clause and compared with the reservations-from-conveyance clause, indicates an intent to avoid a breach of warranty (and therefore an over-conveyance problem), rather than a clear attempt to reserve a full 3/8ths interest, free of the Vyvjala NPRI, to the Wenskes.

Also, in their arguments to this Court, the Wenskes emphasized the fact that the reference to the outstanding Vyvjala NPRI was "made for all purposes." "For all purposes" language may indeed put a grantor on notice that he is receiving an interest subject to all restrictions and reservations contained in the deed. *See Harris v. Windsor*, 294 S.W.2d 798, 800 (Tex. 1956). But again, the Ealys do not contend their interest is free of the Vyvjala NPRI. They merely argue that their interest is not solely responsible for satisfying it. We agree that the deed here cannot be reasonably construed as conveying the entire burden of the outstanding NPRI to the Ealys.

Finally, the mineral-reservation paragraph concludes with this sentence: "If the mineral estate is subject to existing production or an existing lease, the production, the lease and the benefits from

11

it are allocated in proportion to ownership in the minerals." This language strengthens our confidence that the parties intended to split the benefits and burdens of the minerals in the same proportion as their ownership of them.

This deed (1) granted the minerals to the Ealys, (2) reserved 3/8ths of the minerals to the Wenskes, and (3) put the Ealys on notice that the entirety of the minerals are subject to the outstanding 1/4th Vyvjala NPRI to avoid a warranty claim. Giving the words of this deed their plain meaning, reading it in its entirety, and harmonizing all of its parts, we cannot construe it to say that the parties intended the Ealys' interest to be the *sole* interest subject to the NPRI. "[A] careful and detailed examination of the document in its entirety" leads us to conclude that the only reasonable reading of the deed results in the Wenskes and Ealys bearing the Vyvjala NPRI burden in shares proportionate to their fractional interests in the minerals. *See Hysaw*, 483 S.W.3d at 16.

## III

To be clear, we do not hold that all conveyances of a fractional mineral interest subject to an outstanding NPRI will, by default, result in the various fractional-interest owners being proportionately responsible for satisfying the NPRI. Analytically, our holding is just the opposite. In construing an unambiguous deed, the parties' intent—determined by a careful and detailed examination of the document in its entirety—is paramount. Rigid, mechanical, arbitrary, and arcane rules, which at one time offered certainty at the expense of effectuating intent, are relics of a bygone era. We disfavor their use.

Yet we are acutely aware that parties who draft agreements rely on the principles and definitions pronounced by this Court. They rightly depend on us for continuity and predictability in

12

the law, especially in the oil-and-gas field. *See Averyt*, 717 S.W.2d at 895; *Davis v. Davis*, 521 S.W.2d 603, 608 (Tex. 1975). Our decision today does not vitiate the established background principles of oil-and-gas law nor does it open for debate the meaning of clearly defined terms in every deed dispute. *See, e.g.*, *Moser v. U.S. Steel Corp.*, 676 S.W.2d 99, 102 (Tex. 1984) (defining, definitively, "minerals"); *Clifton v. Koontz*, 325 S.W.2d 684, 690–91 (Tex. 1959) (defining the standard for "production" and "production in paying quantities"). Giving effect to the parties' intent advances the principle of certainty under the law. Few things can promote continuity and predictability more than clear expressions of intent within an instrument.

The deed here is not a model of clarity. But, read in its entirety, we see only one reasonable interpretation of its words. Today we give effect to those words. Going forward, drafters of deeds should endeavor to plainly express the contracting parties' intent within the four corners of the instrument they execute. And courts should favor ascertaining and giving effect to that intent over employing arcane rules of construction. Although the court of appeals did not take this route, it nonetheless reached the correct result. Therefore, we affirm its judgment.

_____
Jeffrey V. Brown
Justice


**OPINION DELIVERED:** June 23, 2017

13