# IN THE SUPREME COURT OF TEXAS

No. 18-0581

P<small>IRANHA</small> P<small>ARTNERS</small>, R<small>ANDOLPH</small> M<small>UNDT</small>, <small>AND</small> T<small>HOMAS</small> H. O<small>WEN</small>, J<small>R</small>.,
I<small>NDIVIDUALLY AND AS</small> P<small>ARTNERS OF</small> P<small>IRANHA</small> P<small>ARTNERS</small>, <small>AND</small> C<small>HARLES</small> R<small>AY</small>
O<small>WEN</small>, P<small>ETITIONERS</small>,

v.

J<small>OE</small> B. N<small>EUHOFF AND</small> N<small>ANCY</small> M. N<small>EUHOFF</small>; T<small>HOMAS</small> H. N<small>EUHOFF AND</small> J<small>UDY</small> A.
N<small>EUHOFF</small>; R<small>OBERT</small> V. N<small>EUHOFF AND</small> A<small>NDREA</small> D. N<small>EUHOFF</small>; <small>AND</small> B<small>OCA</small> V<small>AIL</small>, I<small>NC</small>.,
R<small>ESPONDENTS</small>

O<small>N</small> P<small>ETITION FOR</small> R<small>EVIEW FROM THE</small>
C<small>OURT OF</small> A<small>PPEALS FOR THE</small> S<small>EVENTH</small> D<small>ISTRICT OF</small> T<small>EXAS</small>

J<small>USTICE</small> B<small>LAND</small>, joined by J<small>USTICE</small> L<small>EHRMANN</small>, dissenting.

The assignment in dispute conveys an interest "insofar and only insofar" as described in an attachment. The "lands and associated wells" in that attachment describe the northwest quarter of a lease and a well in the quarter. Ignoring these descriptive limitations, the Court confers an interest in the entire lease as a matter of law.

Given that the description contains an express geographic reference to the northwest quarter of the lease, the Court's construction is the least reasonable of three readings. The assignment can be read to convey an interest in the identified well, located in the northwest quarter. Or, as the court of appeals concluded, it can be read to convey an interest in production from any well in the northwest quarter. The Court's construction—that the explicit reference to

one quarter of the land does not restrict the interest conveyed—is not more indicated than the first two.

As the Court acknowledges, the rules of construction that Piranha advocates—whether characterized as "rigid, mechanical rules" we have "incrementally cast off,"[1] or "well-settled contract-construction principles"[2]—do not resolve the geographic ambiguity created by the property description in this case. But the Court and I part company in seeking clues from snippets of unrelated words found in other phrases in the assignment to resolve the case. The two-page, boilerplate assignment language serves a multitude of purposes, and it thus expressly limits the property description to one place—Exhibit A.

Even considered, the provisions the Court uses to shed light on Exhibit A do not further the Court's proposed reading. We should hold the property description ambiguous. The Court has long recognized that an abbreviated property description can be fodder for ambiguity.[3] Because the property description of the interest assigned is ambiguous, we should remand the case for a jury to determine its meaning.[4] As we do not, I respectfully dissent.

## A

Neuhoff Oil assigned its "right, title and interest in and to the properties described in Exhibit 'A'." And *only* as described in Exhibit A: "All oil and gas leases, mineral fee properties

---

[1] *Wenske v. Ealy*, 521 S.W.3d 791, 792 (Tex. 2017).

[2] *URI, Inc. v. Kleberg County*, 543 S.W.3d 755, 763 (Tex. 2018).

[3] *See, e.g.*, *Towers of Tex., Inc. v. J & J Sys., Inc.* 834 S.W.2d 1, 2 (Tex. 1992) (per curiam) (holding that property description raised fact issue "of the location of the leased premises").

[4] *URI*, 543 S.W.3d at 765 (recognizing that an "ambiguity exists" if "contract language is susceptible to more than one reasonable interpretation").

or other interests, INSOFAR AND ONLY INSOFAR AS set out in Exhibit A . . . ." Exhibit A is the linchpin for understanding what interest Neuhoff Oil conveyed to Piranha:

EXHIBIT "A"
Attached to and made a part of that certain
Assignment and Bill of Sale dated Effective October 1, 1999
Neuhoff Oil & Gas Corp., as Assignor

Lands and Associated Well(s):       Puryear #1-28
                                   Wheeler County, Texas

      NW/4, Section 28, Block A-3, H&GN Ry Co. Survey

Oil and Gas Lease(s)/Farmout Agreement(s):

      Oil & Gas Lease(s):

      Lessor:        [the Puryears]
      Lessee:        Marie Lister
      Recorded:    Volume 297, Page 818

Exhibit A describes the Puryear #1-28, the only well on Section 28 at the time. And it describes land: the northwest quarter of Section 28.

Does the assignment convey Neuhoff Oil's interest in one well, the Puryear #1-28, with the property description specifying the well's location? The Neuhoffs say so. So did the lease operator. It paid the Neuhoffs the overriding royalty on other wells drilled in the northwest quarter even after the assignment, until Piranha sought a title opinion to convince the operator on section 28 to switch royalty payments from Neuhoff Oil to Piranha.

Or, does the assignment convey Neuhoff Oil's interest in the northwest quarter? The court of appeals said so.[5] Under this reading, Neuhoff Oil retained its interest in the lease outside the northwest quarter. The Neuhoffs adopt this construction on appeal to this Court.

_____

[5] 578 S.W.3d 543, 551–52 (Tex. App.—Amarillo 2018).

3

Or, finally, does the assignment convey Neuhoff Oil's interest in the *entire* lease, with the reference to the northwest quarter merely identifying a location of an active well on the lease without restricting the property conveyed? Piranha says so.

**B**

Disagreements in interpretation do not mean that a contract is ambiguous.[6] In the face of competing interpretations, a contract that "can be given a definite or certain meaning" should be given one as a matter of law.[7] But when competing interpretations are reasonable, and no context favors one reasonable interpretation over another, then the contract is ambiguous.[8] Such is the case here.

The Court's interpretive resolution—that the assignment conveyed Neuhoff Oil's interest in the entire lease to Piranha—is problematic. The Court explains that Exhibit A "simply identifies the only location on Section 28 and the only well from which oil and gas giving rise to overriding royalties was then being produced."[9] But reading the geography in Exhibit A as merely identifying proves the Neuhoffs' point: geographic identification is unnecessary to convey the interest the Court concludes Neuhoff Oil intended to convey. A conveyance of the overriding royalty interest in the entire lease requires no identifying reference to any well or quadrant of land. All means all, whether one well or one hundred, regardless which quadrant those wells occupy. If the Court's reading is correct, all that matters in Exhibit A is the

---

[6] *See URI*, 543 S.W.3d at 763.

[7] *Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd.*, 940 S.W.2d 587, 589 (Tex. 1996) (citations omitted).

[8] *URI*, 543 S.W.3d at 765.

[9] *Ante* at ___.

description of the "Oil and Gas Lease(s)/Farmout Agreement(s)" which identifies the lease. Exhibit A need state no more.

The Court reads the "Lands and Associated Well(s)" section as merely descriptive of drilling activity on the property. But this section is more reasonably read to geographically limit the conveyance, bounding it to either the Puryear #1-28 well or the northwest quarter of the lease. When viewed against the declaration—in all caps—that the conveyance was "INSOFAR AND ONLY INSOFAR AS" the description set out in Exhibit A, either alternative is superior to the Court's—each gives effect to the geographic language.

The Court acknowledges that Exhibit A is "at least ambiguous, if not completely unenforceable, because it fails to adequately identify the interest assigned, a term that is obviously essential and material to the parties' agreement."[10] The Court attempts to reconcile this ambiguity by referring to words in other provisions in the lease, ignoring the directive that the conveyance is described "[only insofar as] set out in Exhibit A." The Court is correct that our "holistic and harmonizing approach" to deed construction "requires us to consider *all* of the Assignment's provisions and prohibits us from giving greater weight to the granting clause or to any other particular types of clauses."[11] But it does not follow that all provisions will be helpful in interpreting an ambiguous provision.[12] Here, the provisions the Court relies on do nothing to clarify Exhibit A. Any clarification the Court extracts contravenes the assignment's express

---

[10] *Id.* at __ (citing *Fischer v. CTMI, L.L.C.*, 479 S.W.3d 231, 237 (Tex. 2016) ("To be enforceable, a contract must address all of its essential and material terms with 'a reasonable degree of certainty and definiteness.'" (quoting *Pace Corp. v. Jackson*, 284 S.W.2d 340, 345 (Tex. 1955))).

[11] *Id.* at ___ (citing *Wenske v. Ealy*, 521 S.W.3d 791, 794 (Tex. 2017)).

[12] The Court states that "[t]he Dissent challenges our consideration of these provisions" based on the limitation on the conveyance to the description in Exhibit A. *Ante* at ___ n.20. Not only can we consider all the assignment's provisions, we should. But we cannot read them in isolation, and we cannot extract clarification from provisions that simply do not amplify the description in Exhibit A.

5

limitation of the grant description to Exhibit A. Even when considered, these provisions do not inform the Court's construction as the only reasonable one.

The Court first points to a reference to the "interests" Neuhoff Oil conveyed. The entire paragraph, however, reads as a limitation on the conveyance to Exhibit A:

> [Neuhoff Oil assigns] [a]ll oil and gas leases, mineral fee properties or other interests, INSOFAR AND ONLY INSOFAR AS set out in Exhibit A, attached hereto and made a part hereof for all purposes, whether said interest consists of leasehold interest, overriding royalty interest, or both, which shall include any working interest, leasehold rights, overriding royalty interests and reversionary rights held by [Neuhoff Oil] . . . .

The Court suggests that "'shall include any . . . overriding royalty interests' . . . explains that the interest described in Exhibit A 'include[s] any' overriding royalty interest then held by Neuhoff Oil."[13] But this ignores that the "interests" conveyed are expressly limited in the same paragraph to those described in Exhibit A—in all caps no less. A host of mineral-estate interests might be conveyed. But the property that those interests *touch*—the specific land or wells—must be described in Exhibit A. So although the Court referentially concludes that the paragraph conveys "all" of the "overriding royalty interests . . . held by [Neuhoff Oil]," it remains for Exhibit A to explain what "all" means: one well, the northwest quarter, or the entire lease. Outside Exhibit A, there is no property described.

Second, the Court observes that contract rights associated with the property interests conveyed refers to "Leases." This paragraph assigns:

> All presently existing contracts to the extent they are assignable and to the extent they affect the Leases, including agreements for the sale or purchase of oil, gas and associated hydrocarbons, division orders, unit agreements, operating agreements, and all other contracts and agreements arising from, connected with, or attributable to the production therefrom.

---

[13] *Ante* at __.

The Court reasons that "[b]y conveying existing contracts to the extent they affect 'the Leases,' as opposed to just the well or the land, this paragraph further indicates that Neuhoff Oil conveyed its entire interest under the Puryear lease."[14]

The contract rights flow from the conveyance, however, not the opposite. The provision does not enlarge the grant description, which is expressly limited to "interests, INSOFAR AND ONLY INSOFAR AS set out in Exhibit A." The overarching granting clause conveys "right, title and interest" to the properties as *described in Exhibit A*, which are not enlarged in any other provision. It is the property description that delineates any contract right conveyed, not the reverse.

Finally, the Court cites Section II of the assignment, which contains "specific details about the conveyance."[15] The language that follows, providing for a proportional reduction "if less than the entire interest, or if said oil and gas lease(s) covers less than the entire fee title," belies any suggestion that this reference informs the property description in Exhibit A. The Court notes the use of the plural "leases" and that any royalty interest will be paid out of the production of the "oil and gas leases" described in Exhibit A. An assignment must include information about the *lease* from which it springs. But these provisions say nothing about the *land* to which they apply.[16]

---

[14] *Id.* at ___.

[15] *Id.* at ___.

[16] An overriding royalty interest and the underlying lease are intertwined. *See Apache Deepwater, LLC v. McDaniel Partners, Ltd.*, 485 S.W.3d 900, 905 (Tex. 2016) (recognizing that "an overriding royalty . . . will not survive termination of the leasehold it burdens unless the parties have expressly agreed otherwise").

\* \* \*

The single link between the assignment form and the attachment leaves any property description contextually stranded: the property is conveyed "insofar" and "only insofar" as it is described in the attachment. In searching for other links that do not exist, the Court disregards the express geographic language as superfluous. Because this language reasonably can be read to limit the interest conveyed, it should fall to a jury, not this Court, to break the log jam. A jury would consider the surrounding circumstances that each side emphasizes in favor of its competing interpretation.[17] We should reverse the court of appeals' judgment, hold the assignment ambiguous, and remand the case to the trial court to submit the interpretation of the assignment to a jury. Because we do not, I respectfully dissent.

_____

Jane N. Bland
Justice

OPINION DELIVERED:  February 21, 2020

---

[17] "[I]f the contract contains two or more reasonable interpretations, the contract is ambiguous, creating a fact issue as to the parties' intent." *Barrow-Shaver Res. Co. v. Carrizo Oil & Gas, Inc.*, 590 S.W.3d 471, ___ (Tex. 2019). "Only where a contract is ambiguous may a [fact-finder] consider the parties' interpretation and admit extraneous evidence to determine the true meaning of the instrument." *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 333–34 (Tex. 2011) (quoting *David J. Sacks, P.C. v. Haden*, 266 S.W.3d 447, 450–51 (Tex. 2008) (per curiam)).