

## Fourth Court of Appeals
### San Antonio, Texas

## MEMORANDUM OPINION

No. 04-23-00106-CV

**FASKEN OIL AND RANCH, LTD.**, Fasken Land and Minerals, LTD., and Fasken Management, LLC, as General Partner of Fasken Oil and Ranch, LTD., and Fasken Land and Minerals, LTD.,
Appellants

v.

Baldomero A. **PUIG**, III, Emily P. Kenna, James W. Puig, and Priscilla P. Oberton,
Appellees

From the 111th Judicial District Court, Webb County, Texas
Trial Court No. 2021CVK001106D2
Honorable Monica Z. Notzon, Judge Presiding

Opinion by:    Irene Rios, Justice

Sitting:    Rebeca C. Martinez, Chief Justice
Irene Rios, Justice
Beth Watkins, Justice

Delivered and Filed: October 30, 2024

AFFIRMED

In this permissive appeal, we are asked to construe a deed that reserves a non-participating royalty interest on mineral production that is "free of cost forever." The parties agree this term exempts the royalty owner from paying *production* costs. They dispute, however, whether this term requires the royalty owner to pay its share of *postproduction* costs—costs incurred after the minerals are produced, but before they are marketed and sold. The trial court concluded this "free

of cost forever" term applied equally to production and postproduction costs. We agree and affirm the trial court's order granting the appellees' motion for partial summary judgment.

## BACKGROUND

We refer to the appellants as "Fasken Oil" and to the appellees as the "Puig parties." In 1960, B.A. Puig, Jr. and Emilia Gutierrez Puig sold their ranch to Palafox Exploration Company. The deed conveying the ranch (the "Deed") reserved a non-participating royalty interest ("NPRI") in favor of B.A. Puig, Jr. The Puig parties are successors to B.A. Puig, Jr.'s NPRI. Fasken Oil is the successor in interest to Palafox Exploration Company for the relevant leaseholds. It operates oil and gas wells on the ranch and pays the Puig parties royalties from the production of the minerals.

The dispute in this litigation concerns the interpretation of the royalty clause and whether it allows for Fasken Oil to deduct the Puig parties' proportionate share of postproduction costs from their royalty payments. Historically, Fasken Oil has deducted the Puig parties' share of postproduction costs from their royalty payments. In 2021, the Puig parties sued Fasken Oil asserting, among other things, the royalty clause in the Deed does not allow Fasken Oil to deduct the Puig parties' share of postproduction costs and seeking damages for underpaid royalties. Relevant to this appeal, the Puig parties sought a declaratory judgment ruling their NPRI cannot be burdened with postproduction costs.

Fasken Oil and the Puig parties filed competing motions for partial summary judgment seeking a declaration of their respective rights under the Deed. Specifically, Fasken Oil sought a declaration that it may deduct postproduction costs from the royalty payments it makes to the Puig parties, and the Puig parties sought a declaration that their NPRI is free of postproduction costs.

The trial court granted the Puig parties' motion and denied Fasken Oil's motion, ruling "the Puig [parties'] royalties are free of post-production costs, with the exception of the Puig [parties'] pro-rata share of severance taxes, which the Puig [parties concede] they must bear." On Fasken Oil's motion, the trial court permitted an interlocutory appeal on the following controlling question of law: "Does the [Deed's] 'free of cost forever' language preclude the deduction of post-production costs?"[1] *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(d) (providing for a permissive interlocutory appeal when a controlling question of law involves a substantial ground for difference of opinion, and its immediate resolution may materially advance the litigation). We accepted Fasken Oil's appeal. *See id.* § 51.014(f).

## STANDARD OF REVIEW

We review a trial court's ruling on a summary judgment motion de novo. *Tarr v. Timberwood Park Owners Assoc., Inc.*, 556 S.W.3d 274, 278 (Tex. 2018). To prevail on a traditional summary judgment motion, the movant must show that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215–16 (Tex. 2003). In reviewing a trial court's summary judgment ruling, we take as true all evidence favorable to the nonmovant, indulging every reasonable inference and resolving any doubts in the nonmovant's favor. *Knott*, 128 S.W.3d at 215.

When competing summary judgment motions are filed—and the trial court grants one motion but denies the other—we review both motions, determine all questions presented, and

---

[1] The trial court's order also certified a second controlling question of law: "If the language of [the Deed] precludes the deduction of post-production costs, was deduction of these costs ratified in writing as to the Sutton Leases?" However, Fasken Oil asserts in its brief that it is only presenting argument on the first controlling question of law and has chosen to "abandon its ratification defense in this litigation (Certified Question 2)." Therefore, we do not address the second certified question in this appeal.

render the judgment the trial court should have rendered. *Nettye Engler Energy, LP v. BlueStone Nat. Res. II, LLC*, 639 S.W.3d 682, 689 (Tex. 2022).

However, in a permissive appeal, we limit our review to the controlling legal question on which there is a substantial ground for disagreement and for which immediate resolution may materially advance the litigation. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(d); TEX. R. APP. P. 28.3(e)(4); TEX. R. CIV. P. 168.

## DISCUSSION

The royalty clause that is the subject of the dispute states:

> There is SAVED, EXCEPTED AND RESERVED, in favor of the undersigned, B.A. Puig, Jr., out of the above described property, an undivided one-sixteenth (1/16) of all the oil, gas and other minerals, except coal, in, to and under or that may be produced from the above described acreage, to be paid or delivered to Grantor, B.A. Puig, Jr., as his own property free of cost forever. Said interest hereby reserved is Non-Participating Royalty . . . .

We must determine whether the language "free of cost forever" relieves the royalty owners from bearing their proportionate share of postproduction costs.

"Deeds are interpreted and construed as contracts." *Nettye Engler Energy, LP*, 639 S.W.3d at 689. "We may construe a deed as a matter of law only if it is unambiguous." *ConocoPhillips Co. v. Koopmann*, 547 S.W.3d 858, 874 (Tex. 2018). The construction of an unambiguous deed is a question of law for the court. *Id.* In construing a deed, "we must ascertain and give effect to the parties' intentions as expressed in the writing itself." *Id.* "We give terms their plain, ordinary, and generally accepted meaning unless the instrument shows that the parties used them in a technical or different sense." *Id.* "[O]ur rules for deed construction have moved even more decisively toward (1) a focus on the intent of the parties, expressed by the language within the four corners of the deed, and (2) harmonizing all parts of an instrument, even if particular parts appear contradictory or inconsistent." *Wenske v. Ealy*, 521 S.W.3d 791, 795 (Tex. 2017). "[I]ntent must

be determined by a careful and detailed examination of the document in its entirety, rather than by application of mechanical rules of construction that offer certainty at the expense of effectuating intent." *Id.* "The parties' intent, when ascertainable, prevails over arbitrary rules." *Id.* at 795–96. When we can ascertain the parties' intent by examination within the four corners of the deed, we need not apply default rules to determine the deed's meaning. *Id.* at 796.

Usually, a royalty owner's "royalty is free of the expenses incurred to bring minerals to the surface (production costs) but not expenses incurred thereafter to make production marketable (postproduction costs)." *Devon Energy Prod. Co., L.P. v. Sheppard*, 668 S.W.3d 332, 336 (Tex. 2023). "After production, costs are incurred to remove impurities, to transport production from the wellhead, and to otherwise ready it for sale to a downstream market or the public." *Id.* The investment in postproduction costs generally makes production more valuable. *See id.*

While the general rule is that a royalty is free of the expenses of production but subject to its share of postproduction costs, "the parties may modify this general rule by agreement." *French v. Occidental Permian Ltd.*, 440 S.W.3d 1, 3 (Tex. 2014); *see also Heritage Res., Inc. v. NationsBank*, 939 S.W.2d 118, 122 (Tex. 1996) ("Although it is not subject to the costs of production, royalty is usually subject to post-production costs, including taxes, treatment costs to render it marketable, and transportation costs."). Parties may "agree on what royalty is due, the basis on which it is to be calculated, and how expenses are to be allocated." *Sheppard*, 668 S.W.3d at 336. A royalty "free of postproduction costs is more valuable to the royalty holder—and more costly to the producer—because it means the landowner will share in the enhanced value of production but not the expenses incurred to make it so." *Id.* at 336–37.

Here, the deed reserves a royalty interest in minerals that may be produced "free of cost forever." Fasken Oil argues the free of cost forever language refers to production costs and not

postproduction costs. While the general rule may be that royalty owners are "free of the expenses of production but subject to postproduction costs," parties are free to agree otherwise. *See French*, 440 S.W.3d at 3 (alteration omitted). And, a clear expression of the parties' intent within the four corners of the deed will override default rules that conflict with that clear expression. *Wenske*, 521 S.W.3d at 795–796.

In *Chesapeake Exploration, L.L.C. v. Hyder*, 483 S.W.3d 870 (Tex. 2016), the supreme court addressed language in a royalty clause that is similar to the language in the royalty clause in this case. In *Hyder*, the supreme court reviewed a royalty clause that provided for "'a perpetual, cost-free (except only its portion of production taxes) overriding royalty of five percent (5.0%) of gross production obtained' from directional wells drilled on the lease but bottomed on nearby land." *Hyder*, 483 S.W.3d at 872. The parties disputed whether the cost-free language in the royalty clause freed the royalty owner from paying a proportionate share of postproduction costs. *Id.* The *Hyder* court held the royalty clause deviated from the general rule and operated to free the royalty owner from paying postproduction costs. *Id.* at 876.

Fasken Oil argues the "cost-free" language was not determinative in the *Hyder* court's holding. Rather, Fasken Oil contends the *Hyder* court relied on the parenthetical exception for "production taxes" because production taxes are postproduction expenses. Because there is no comparable language excepting a postproduction cost from the royalty clause in this case, Fasken Oil asserts *Hyder* is inapposite. We disagree.

When discussing the parenthetical exception for production taxes, the *Hyder* court stated:

> The exception for production taxes, which we have said are postproduction expenses, cuts against Chesapeake's argument. It would make no sense to state that the royalty is free of production costs, except for postproduction taxes (no dogs allowed, except for cats). The exception for taxes might be taken to indicate that "cost-free" refers only to postproduction costs. But a taxes exception to freedom

from production costs is not uncommon in leases, suggesting only that lease drafters are not always driven by logic.

We thus disagree with the Hyders that "cost-free" in the Hyder-Chesapeake overriding royalty provision cannot refer to production costs. As noted above, drafters frequently specify that an overriding royalty does not bear production costs even though an overriding royalty is already free of production costs simply because it is a royalty interest. But Chesapeake must show that while the general term "cost-free" does not distinguish between production and postproduction costs and thus literally refers to all costs, it nevertheless cannot refer to postproduction costs here.

*Id.* at 874.

The *Hyder* court acknowledged it would make no sense for the "cost-free" language to refer only to production costs, yet except a postproduction expense from its application. *See id.* at 874 ("It would make no sense to state that the royalty is free of production costs, except for postproduction taxes (no dogs allowed, except for cats)."). However, the *Hyder* court simply stated that the exception for taxes cuts against Chesapeake's argument in that case rather than being a dispositive point. The *Hyder* court acknowledged the taxes exception in that case could be read to indicate that the cost-free nature of the royalty must refer to postproduction costs because taxes are always postproduction costs. But on the other hand, the *Hyder* court acknowledged that the language could simply be the result of poor draftsmanship. *See id.* ("But a taxes exception to freedom from production costs is not uncommon in leases, suggesting only that lease drafters are not always driven by logic."). The court then stated that it disagreed with the royalty owner's position that the words "cost-free" in the "royalty provision cannot refer to production costs." *Id.* Rather than relying on the parenthetical exception for production taxes, the *Hyder* court's holding was instead based on a plain reading of the clause. *See id.*

The *Hyder* court held that "the general term 'cost-free' does not distinguish between production and postproduction costs and thus literally refers to all costs . . . ." *Id.* The court stated

that unless Chesapeake is able to show that "cost-free" only refers to production costs, and "cannot refer to postproduction costs[,]" then the general term "cost-free" will be given its normal meaning and apply to all costs. *Id.* Here, Fasken Oil does not dispute that the "perpetual, cost-free" language in *Hyder* and the "free of cost forever" language in this case are indistinguishable. We likewise do not see a significant distinction between the language used in *Hyder* and the language in this case. Thus, just as in *Hyder*, the "free of cost forever" language in the Deed here "does not distinguish between production and postproduction costs and thus literally refers to all costs." *Id.*

Just as Chesapeake did in *Hyder*, Fasken Oil argues here that the "free of cost forever" language is mere surplusage referring only to production costs that are already exempted from the royalty because, according to Fasken Oil, the royalty provision provides for a valuation at the wellhead. Fasken Oil's argument would have merit if the Deed provided for a valuation at the wellhead because a royalty that is valued at the well generally bears postproduction costs. *Hyder*, 483 S.W.3d at 873. That is because "[t]he concept of 'deductions' of marketing costs from the value of the [minerals] is meaningless when [the minerals are] valued at the well." *Heritage Res.*, 939 S.W.2d at 130 (Owens, J., concurring). Using the "net-back approach," the value of the minerals "at the well" is the value in the marketplace *at the point of sale* with the reasonable postproduction costs—costs incurred between the wellhead and the point of sale—backed out. *Id.* Stated differently, the value of the minerals "at the well" is determined by subtracting reasonable postproduction costs from the value of the minerals at the point of sale. *See id.* Thus, any language attempting to exclude the burden of postproduction costs from a royalty is meaningless when the royalty is valued at the well because "logic and economics tell us that there are no marketing costs to 'deduct' from the value at the wellhead." *Id.*

But this Deed does not contain a valuation point. The royalty provision reserves a royalty interest in "all the oil, gas and other minerals, except coal, in, to and under or that may be produced from the above described acreage . . . ." Fasken Oil argues that using the word "produced" indicates the parties meant for the valuation to be at the wellhead because "[p]roduction means actual physical extraction of the mineral from the land." *Exxon Corp. v. Middleton*, 613 S.W.2d 240, 244 (Tex. 1981). Fasken Oil's argument that the word "produced" in the royalty provision means the valuation point of the royalty is at the wellhead is a strained extension of current law. First, Fasken Oil fails to point us to authority requiring a valuation at the well when the parties use the word "produced." Second, even a royalty provision that places the valuation point at the point of sale would likely use the word "produced" in its granting clause because, regardless of the location of the valuation point, the minerals would still have to be produced at some point in time for a payable royalty to exist. *See, e.g.*, *Hyder*, 483 S.W.3d at 871 n.4, 873, 873 n.17 (holding a gas royalty that used the word "produced" did not bear postproduction costs because it was based on "the price actually received"). We are not persuaded by Fasken Oil's argument that the word "produced" somehow creates a wellhead valuation point.[2]

We do not read any language in the royalty provision providing for a valuation point at the well. Therefore, we must give effect to the "free of cost forever" language the parties agreed to in the Deed. Under a plain text reading of the Deed, B.A. Puig, Jr. reserved a one-sixteenth NPRI that is free of costs forever. Following the precedent from *Hyder*, as we must, cost-free language does not distinguish between production costs and postproduction costs and thus literally refers to

---

[2] We also note that the royalty clause in *Hyder* used the words "gross production." *Hyder*, 483 S.W.3d at 872. The dissent in *Hyder* proffered a similar contention to the arguments presented by Fasken Oil in this case. *Id.* at 877 (Brown, J., dissenting). The *Hyder* dissent believed the words "gross production obtained from each such well" indicates a valuation point at the well when there is no other express valuation point downstream. *Id.* While the dissent in *Hyder* may be persuasive authority, the *Hyder* majority is binding precedent on this court. Therefore, we follow the *Hyder* majority.

all costs unless the particular deed or contract shows that the cost-free language is referring only to production costs. Because Fasken Oil is unable to show that "free of cost forever" refers only to production costs, and not postproduction costs, we conclude the NPRI here is free of both production and postproduction costs.

Accordingly, Fasken Oil's sole issue is overruled.

## CONCLUSION

We affirm the trial court's order granting the Puig parties' motion for partial summary judgment and denying Fasken Oil's motion for summary judgment.


Irene Rios, Justice