# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-19-00303-CV

---

**Lantana Ridge Property Owners Association, Inc., Appellant**

**v.**

**SJWTX, Inc. d/b/a Canyon Lake Water Service Co., Appellee**

---

### FROM THE 22ND DISTRICT COURT OF COMAL COUNTY
### NO. C2018-1123A, THE HONORABLE WILLIAM C. KIRKENDALL, JUDGE PRESIDING

---

## M E M O R A N D U M   O P I N I O N

Lantana Ridge Property Owners Association, Inc. (Lantana Ridge) appeals from the trial court's final summary judgment in favor of SJWTX, Inc. At issue in this appeal is whether a declaration of covenants, conditions, and restrictions governs SJWTX's easement. The trial court concluded the declaration did not apply and awarded SJWTX attorney's fees. For the following reasons, we reverse the trial court's order as to the claims related to the declaration and the award of attorney's fees and remand for further proceedings consistent with this opinion.

## BACKGROUND

In 2000, Lantana Development, LLC acquired 357.58 acres, recorded a new subdivision plat called Lantana Ridge Unit 1, and then executed and recorded a declaration of covenants, conditions, and restrictions "govern[ing] all Lots within Lantana Ridge Unit 1" (the 2000 Declaration). The 2000 Declaration expressly defines the following terms: "'Association'

means the Lantana Ridge Unit 1 Property Owners Association, Inc."; "'Declarant' refers to Lantana Development, LLC, its assignees and other lawful successors in interest"; and "'Property' means all the land in Comal County, Texas, consisting of approximately 357.58 acres, which has been platted as Lantana Ridge Unit 1." The 2000 Declaration requires that improvements be approved by an architectural review committee and provides the Association or Declarant with the right to enforce it. Section 2.01 of the 2000 Declaration provides procedures for bringing additional properties within the 2000 Declaration's scheme:

> 2.01 <u>Staged Subdivision</u>. The Declarant, its successors and assigns, shall have the right and option at any time prior to December 31, 2020, to bring within the scheme of this Declaration additional real property, so long as such real property is within the area described upon Exhibit "A" attached hereto [including without limitation, subsequent sections of the Lantana Ridge Unit 1 (the "Subdivision")], or if such additional property is contiguous to the real property subject to this Declaration at the time of such addition, without the consent or approval of the owners of any Lots, or the Association, as long as such additions are consented to by the owners of such additional properties. Furthermore, other real property may be subject to the terms of this Declaration at any time with the consent of the Declarant, the owners of such additional real property and two-thirds (2/3) of each class of Members of the Association. Declarant shall record a Notice of Addition of land describing the properties to be made subject to the terms of this Declaration, if and when additional properties are brought within the Declaration in accordance with the requirements set forth above. Upon recordation of such Notice of Addition of land, then and thereafter the Owners of all Lots in the Subdivision shall have the rights, privileges and obligations with respect to all of the Property in the Subdivision (including such additional properties) in accordance with the provisions of, and to the extent set forth in this Declaration.

Exhibit "A" consists of a map of 626.91 acres that includes the Property and an additional 269.33 acres.

In 2008, Lantana Development, by special warranty deed (the 2008 Deed), conveyed 86.289 acres to Dirt Dealers XVI, Ltd. (Dirt Dealers). The 2008 Deed states that the conveyance was "made subject to" the "[r]ight of annexation to the terms, conditions, provisions,

2

easements, restrictions, reservations and other matters set out" in the recorded 2000 Declaration. Three years later, Dirt Dealers and SJWTX entered into a water utility service agreement, reciting that Dirt Dealers "owns approximately 86.289 acres of land" and "is planning to develop a real estate subdivision on approximately 47.89 Acres [of] the Property" "to which [SJWTX] will provide water service" and attaching a "Preliminary Land Use Plan," surveying the 47.89 acres into a 33 lot plat called "Lantana Ridge, Unit Eight." The next year, Dirt Dealers granted SJWTX a water plant site easement (the 2012 Easement), providing for a "perpetual" and "exclusive blanket easement" to "place a pump station and water tank" on a 0.395 acre tract within the 47.89 acre plot described as "Lantana Ridge, Unit Eight" in the water utility service agreement. In the recorded 2012 Easement, Dirt Dealers warranted "that it has full, complete, unencumbered title to the Property Subject to Easement, free and clear of any rights, title, claims, liens or encumbrances held by any third party." Dirt Dealers then recorded the Lantana Ridge, Unit Eight plat (Unit 8), which showed the easement on lots 21 and 33.

In 2013, Dirt Dealers signed and recorded a Notice of Addition of Land for Unit 8 (the 2013 Notice), which references the 2000 Declaration and states:

> WHEREAS the Declaration governs and restricts the use of property located within Lantana Ridge Units 1-5;
>
> WHEREAS the undersigned Declarant owns title to all of the land located within Lantana Ridge Unit Eight (the "Unit 8 Land"), which is described in and subdivided pursuant to the Unit 8 Plat; and
>
> WHEREAS Section 2.01 of the Declaration authorizes the Declarant to subject the Unit 8 Land to the Declaration and Declarant desires to take such action;
>
> THEREFORE Declarant hereby files this Notice of Addition of Land to provide public notice that the Unit 8 Land is subject to the terms and restrictions contained in the Declaration, with all accompanying rights and obligations.

In June 2018, SJWTX contacted Lantana Ridge and apprised them of its intent to build a 24 foot water storage tank on lot 21 with the egress and ingress on lot 33, commencing the following month. The next month, Lantana Ridge sued SJWTX for violation of the 2000 Declaration, nuisance, temporary and permanent injunctive relief, and attorney's fees. SJWTX answered and counterclaimed with a request for declaratory relief and attorney's fees under the Uniform Declaratory Judgments Act (UDJA). *See* Tex. Civ. Prac. & Rem. Code §§ 37.001–.011. Specifically, SJWTX requested declaratory relief that "[SJWTX]'s easement / ownership interest in the Subject Property is unburdened by the [2000 Declaration] of [Lantana Ridge]." Lantana Ridge then amended its petition to be titled "Plaintiff's First Amended Original Petition and Application for Preliminary Injunction, Permanent Injunction and Declaratory Judgment,"[1] to include a new claim that SJWTX is violating the Texas Administrative Code, and to assert the implied restrictive negative easement doctrine as an alternative ground for concluding that the Declaration applies to SJWTX's easement.

The parties filed cross motions for summary judgment. SJWTX moved for traditional summary judgment on its UDJA counterclaim and on Lantana Ridge's claims, arguing that there was no breach because the 2000 Declaration did not apply to SJWTX's easement, that Lantana Ridge's Texas Administrative Code claim is not within the jurisdiction of the court and is inapplicable, and that Lantana Ridge's nuisance and injunctive relief claims fail. Lantana Ridge moved for traditional summary judgment on its claim for breach of the 2000 Declaration and for no evidence summary judgment on SJWTX's UDJA counterclaim and requested declaratory relief as to the 2000 Declaration's application and attorney's fees.

---

[1] Although the petition is titled to include a request for declaratory judgment, the petition does not specifically request any declaratory relief.

The trial court granted SJWTX's motion for summary judgment and denied Lantana Ridge's motion for traditional and no evidence summary judgment. The trial court ordered that Lantana Ridge take nothing on its claims for affirmative relief and declared that SJWTX has established as a matter of law that the 2000 Declaration does not encumber its easement rights.[2] Because SJWTX's counterclaim for attorney's fees was not at issue in its motion, the summary judgment order noted that the attorney's fees "claim shall continue to pend." Lantana Ridge moved for reconsideration, which the trial court denied. Lantana Ridge appealed to this Court, but we dismissed for lack of jurisdiction over the interlocutory order. *See Lantana Ridge Prop. Owners Ass'n v. SJWTX, Inc.*, No. 03-18-00662-CV, 2019 WL 361879, at *1–2 (Tex. App.—Austin Jan. 29, 2019, no pet.) (mem. op.). The trial court then signed a final judgment incorporating the order on the cross motions for summary judgment and awarding SJWTX $50,000 in attorney's fees. Lantana Ridge appeals this final summary judgment.

## DISCUSSION

Lantana Ridge raises four issues on appeal: (1) SJWTX's easement is subject to the 2000 Declaration; (2) alternatively, the 2000 Declaration's terms apply through the equitable doctrine of implied reciprocal negative easement; (3) the award of attorney's fees is not supported by the UDJA or other legal authority; and (4) the evidence supporting SJWTX's award

---

[2] The trial court also made findings of fact and conclusions of law, but "[f]indings of fact and conclusions of law have no place in a summary judgment proceeding." *Gardner v. Abbott*, 414 S.W.3d 369, 380 (Tex. App.—Austin 2013, no pet.) (quoting *Willms v. Americas Tire Co.*, 190 S.W.3d 796, 810 (Tex. App.—Dallas 2006, pet. denied)). Thus, we give no weight to the findings and conclusions because "'[i]f summary judgment is proper, there are no facts to find'" and "the trial court's precise legal conclusions are neither essential nor particularly germane to the disposition of an appeal from a summary judgment because the grounds for granting summary judgment are limited to those specified in the motion, and such judgments are reviewed de novo." *Id.* (quoting *Willms*, 190 S.W.3d at 810).

of attorney's fees is factually insufficient.[3]   In response, SJWTX raises for the first time a jurisdictional issue that Lantana Ridge lacks standing to assert a violation of the 2000 Declaration.  *See Texas Ass'n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 445 (Tex. 1993) (concluding that because "standing is a component of subject matter jurisdiction, it cannot be waived and may be raised for the first time on appeal").  Because lack of standing would deprive this Court of jurisdiction to hear the appeal, we first consider SJWTX's jurisdictional issue before addressing the scope of our review and reaching the merits of Lantana Ridge's appeal.

**Jurisdiction**

SJWTX claims Lantana Ridge lacks standing because the 2000 Declaration grants the "Association" enforcement power and defines "Association" as "Lantana Ridge Unit 1 Property Owners Association, Inc.," not "Lantana Ridge Property Owners Association, Inc."  In response, Lantana Ridge asks this Court to take judicial notice of its 2004 articles of amendment filed with the Texas Secretary of State showing a change of name from "Lantana Ridge Unit 1 Property Owners Association, Inc." to "Lantana Ridge Property Owners Association, Inc."  *See Office of Pub. Util. Counsel v. Public Util. Comm'n*, 878 S.W.2d 598, 600 (Tex. 1994) (authorizing court of appeals to take requested judicial notice of readily ascertainable public records from state agency that are capable of accurate and ready determination and whose accuracy cannot reasonably be questioned).  SJWTX does not dispute the accuracy of this public record but argues that judicial notice is "improper because it seeks to add adjudicative facts that were not before the trial court at the summary-judgment stage."  But the fact for which Lantana Ridge requests judicial notice goes to the jurisdictional inquiry; it is not an adjudicative fact

---

[3] Lantana Ridge does not challenge the trial court's rulings granting SJWTX's motion for summary judgment on Lantana Ridge's nuisance and Texas Administrative Code claims.

going to the merits.[4]  We take "judicial notice of undisputed facts" when "they impact our jurisdictional inquiry." *Bridgeport Indep. Sch. Dist. v. Williams*, 447 S.W.3d 911, 916 n.4 (Tex. App.—Austin 2014, no pet.) (citing Tex. R. Evid. 201; *Freedom Commc'ns, Inc. v. Coronado*, 372 S.W.3d 621, 623–24 (Tex. 2012)).  Accordingly, we grant Lantana Ridge's request to take judicial notice and conclude that jurisdiction exists to consider the merits of the appeal.

**Scope of Review**

Although the trial court's order awarding attorney's fees and incorporating the summary judgment order is a final judgment, we must determine for the purpose of the scope of our review if Lantana Ridge's motion for summary judgment requested final judgment relief. *See CU Lloyd's of Tex. v. Feldman*, 977 S.W.2d 568, 569 (Tex. 1998) (per curiam) ("When considering cross motions for summary judgment, a court of appeals may reverse and render the judgment that the trial court should have rendered.  However, before a court of appeals may reverse summary judgment for one party and render judgment for the other party, both parties must ordinarily have sought final judgment relief in their cross motions for summary judgment." (citations omitted)).  In its motion, Lantana Ridge sought summary judgment on SJWTX's liability for breach of the 2000 Declaration claim but did not request summary judgment on its pleaded injunctive relief and money damages claims and therefore did not seek final judgment

---

[4]  For support, SJWTX cites *SEI Business Systems, Inc. v. Bank One Texas, N.A.*, 803 S.W.2d 838, 840–41 (Tex. App.—Dallas 1991, no writ).  But in *SEI*, the court of appeals declined to take judicial notice of an amendment to the articles of incorporation showing a name change because it was an adjudicative fact as to the merits and expressly noted that the "change of name does not affect our jurisdiction." *Id.*

relief.[5]  Thus, our scope of review is limited to whether the trial court erred in granting SJWTX's motion on the issues expressly stated therein and in awarding SJWTX attorney's fees.  *See id.* (concluding court of appeals erred in reversing and rendering judgment on plaintiff's motion for partial summary judgment that was denied by trial court but affirming reversal of trial court's grant of defendant's motion for summary judgment); *Fair v. Arp Club Lake, Inc.*, 437 S.W.3d 619, 628 (Tex. App.—Tyler 2014, no pet.) ("When both sides move for summary judgment and the trial court grants one motion but denies the other, the appellate court should review both sides' proof and determine all questions presented by the motions. . . .  However, the denial of a cross-motion for summary judgment is reviewable only if that cross-motion sought a disposition of all claims in the trial court."); *Massey v. Southwest Petroleum Co.*, No. 05-07-00650-CV, 2008 WL 2896613, at *2 (Tex. App.—Dallas July 29, 2008, no pet.) (mem. op.) (noting that although parties filed cross motions for summary judgment, reviewing court does not review trial court's decision to deny motion for partial summary judgment and limiting review to trial court's decision to grant motion for final take nothing summary judgment).

---

[5] In *CU Lloyd's of Texas v. Feldman*, the Texas Supreme Court noted an exception to the rule:  "When the relief sought is a declaratory judgment, an appellate court may properly render judgment on liability alone."  977 S.W.2d 568, 569 (Tex. 1998) (per curiam) (citing *Bowman v. Lumberton Indep. Sch. Dist.*, 801 S.W.2d 883, 889 (Tex. 1990)).  This exception does not apply here.  Although Lantana Ridge requested declaratory relief, there is no basis for this declaratory relief because it would add nothing to what would be implicit or express in a final judgment on its breach of the 2000 Declaration claim.  *See Kyle v. Strasburger*, 522 S.W.3d 461, 467 n.10 (Tex. 2017) (per curiam) ("We note, however, that '[t]here is no basis for declaratory relief when a party is seeking in the same action a different, enforceable remedy, and a judicial declaration would add nothing to what would be implicit or express in a final judgment for the enforceable remedy.'" (quoting *Universal Printing Co. v. Premier Victorian Homes, Inc.*, 73 S.W.3d 283, 296 (Tex. App.—Houston [1st Dist.] 2001, pet. denied))).

**SJWTX's Motion for Summary Judgment**

Having determined our jurisdiction and the scope of our review, we turn to the merits of whether the trial court erred in granting SJWTX's motion for summary judgment. We review a trial court's grant of a summary judgment motion de novo, examining the record "in the light most favorable to the nonmovant, indulging every reasonable inference and resolving any doubts against the motion." *See Buck v. Palmer*, 381 S.W.3d 525, 527 (Tex. 2012) (per curiam) (quoting *City of Keller v. Wilson*, 168 S.W.3d 802, 824 (Tex. 2005)). As the movant, SJWTX had the burden to establish that "there is no genuine issue as to any material fact" and that it "is entitled to judgment as a matter of law on the issues expressly set out in the motion." Tex. R. Civ. P. 166a(c).

At issue is whether SJWTX met its burden to establish that it was entitled as a matter of law to declaratory relief that its easement was not burdened by the 2000 Declaration and to a take nothing judgment on Lantana Ridge's claim of breach of the 2000 Declaration. To meet its burden on the grounds and issues expressly raised in its motion, SJWTX had to establish as a matter of law either that the 2000 Declaration required SJWTX's consent for its easement to be annexed or that SJWTX's easement was not burdened by the right of the annexation through the chain of title. But SJWTX's motion for summary judgment will not succeed if the language of the relevant written instruments is ambiguous or if the language unambiguously means something other than what SJWTX proposed. Because SJWTX did not establish as a matter of law that the language of the relevant written instruments unambiguously means what it proposed, we conclude that SJWTX failed to meet its burden on both grounds.

First, SJWTX did not meet its burden to establish as a matter of law that its consent was required for the annexation of its easement. Section 2.01 set out the requirements for adding additional property to be subject to the 2000 Declaration:

> The Declarant, its successors and assigns, shall have the right and option at any time prior to December 31, 2020, to bring within the scheme of this Declaration additional real property, so long as such real property is within the area described upon Exhibit "A" attached hereto [including without limitation, subsequent sections of the Lantana Ridge Unit 1 (the "Subdivision")], *or* if such additional property is contiguous to the real property subject to this Declaration at the time of such addition, without the consent or approval of the owners of any Lots, or the Association, *as long as such additions are consented to by the owners of such additional properties*.

(Emphases added.) The parties neither disputed in the trial court that SJWTX's easement is on property "within the area described upon Exhibit 'A'" of the 2000 Declaration[6] nor asserted that Section 2.01 is ambiguous. Instead, the parties dispute whether the final clause in the first sentence of Section 2.01 unambiguously modifies both clauses on either side of the "or" or only the latter clause. SJWTX takes the former position and argues that the property owners' consent is required for annexing property within the area described upon Exhibit A. Lantana Ridge takes the latter position and asserts that property within the area described upon Exhibit A "could be annexed unilaterally by the Declarant."

Using principles of contract construction that are well settled, we review de novo questions of law as to the presence of ambiguity and the interpretation of an unambiguous declaration of restrictive covenants. *See URI, Inc. v. Kleberg County*, 543 S.W.3d 755, 763 (Tex. 2018); *Tarr v. Timberwood Park Owners Ass'n*, 556 S.W.3d 274, 281 (Tex. 2018)

---

[6] SJWTX concedes in a post-submission letter that it does not challenge that exhibit "A" in the 2000 Declaration contains what became Unit 8, on which its easement is located.

10

("[R]estrictive covenants are subject to the general rules of contract construction." (quoting *Pilarcik v. Emmons*, 966 S.W.2d 474, 478 (Tex. 1998)). "A contract is not ambiguous merely because the parties disagree about its meaning and may be ambiguous even though the parties agree it is not." *URI*, 543 S.W.3d at 763. "Interpretation of a contract becomes a fact issue to be resolved by extrinsic evidence only when application of pertinent rules of construction leaves a genuine uncertainty as to which of two meanings is proper." *Harris v. Rowe*, 593 S.W.2d 303, 306 (Tex. 1979). When contractual meaning is disputed, our primary objective is to ascertain and give effect to the parties' intent as expressed in the instrument, presuming parties intend what the contract's words say and interpreting the language according to the plain, ordinary, and generally accepted meaning unless the contract directs otherwise. *URI*, 543 S.W.3d at 763.

Here, however, we need not decide if Section 2.01 is ambiguous or unambiguous because SJWTX has not met its burden for summary judgment to establish its position as a matter of law that the final clause in the first sentence of Section 2.01 unambiguously modifies both preceding clauses on either side of the "or."[7] SJWTX does not apply any pertinent rules of construction to support its position. Moreover, we generally construe modifiers as "'intended to refer to the words closest to them in [a] sentence'" unless there exists some "indicia of other meaning" to overcome this construction. *See Mikob Props., Inc. v. Joachim*, 468 S.W.3d 587, 595–96 (Tex. App.—Dallas 2015, pet. denied) (quoting *Samano v. Sun Oil Co.*, 621 S.W.2d 580, 581–82 (Tex. 1981); citing *Barnhart v. Thomas*, 540 U.S. 20, 26 (2003)). SJWTX has not identified some "indicia of other meaning" such that the final clause in the first sentence of

---

[7] Although we do not give any weight to the trial court's findings of fact and conclusions of law in a summary judgment proceeding, we note that the trial court described Section 2.01 as "a confusing paragraph" and as not making clear "whether the annexation of the property in Exhibit 'A' could be done without any consent of 'property owners'."

Section 2.01 unambiguously modifies both preceding clauses on either side of the "or" rather than just the nearest clause, as Lantana Ridge argues.

Second, SJWTX did not meet its burden to establish as a matter of law that the easement was conveyed through a chain of title free and clear of the right of annexation enunciated in the 2000 Declaration. In the 2008 Deed conveying the property on which SJWTX's easement is now located, Lantana Development and Dirt Dealers agreed that the conveyance was "made subject to" the "[r]ight of annexation to the terms, conditions, provisions, easements, restrictions, reservations and other matters set out" in the recorded 2000 Declaration. But in the 2012 Easement, Dirt Dealers granted the easement to SJWTX and warranted "that it has full, complete, unencumbered title to the Property Subject to Easement, free and clear of any rights, title, claims, liens or encumbrances held by any third party." SJWTX argues that the 2008 "deed's 'subject-to' reference to restrictive covenants is designed to place the grantee on notice that the restrictions might apply; it is not an acknowledgment that the restrictions are valid and enforceable against the tract conveyed" and the "principal function of a 'subject-to' clause is to protect the grantor on its warranty of title should the restrictions be found to apply to the assigned tract." *See Wenske v. Ealy*, 521 S.W.3d 791, 796 (Tex. 2017); *Teal Trading & Dev., LP v. Champee Springs Ranches Prop. Owners Ass'n*, 432 S.W.3d 381, 390–92 (Tex. App.—San Antonio 2014, pet. denied).

To the extent SJWTX is arguing that we should apply a rule of construction to interpret all subject-to clauses, including the subject-to clause in the 2008 Deed, as unambiguously only protecting the grantor on its warranty of title, we disagree. *See Piranha Partners v. Neuhoff*, ___ S.W.3d ____, ____, 2020 WL 868120, at *4 (Tex. Feb. 21, 2020) (noting that "we have long rejected reliance on 'arbitrary' rules when construing unambiguous

12

contractual language"); *Wenske*, 521 S.W.3d at 794 (rejecting approach that applies "mechanical rules of construction, such as giving priority to certain clauses over others, or requiring the use of so-called 'magic words'" in interpreting subject-to clauses); *Goss v. Addax Minerals Fund, LP*, No. 07-14-00167-CV, 2016 WL 1612918, at *4 (Tex. App.—Amarillo Apr. 21, 2016, pet. denied) (mem. op.) (rejecting argument that "'subject to' language in the deed's granting clause is intended only to limit the warranty of title" and agreeing with position that this "disregards the plain language of the granting clause, which states the grant is made 'for the consideration and subject to the reservations from and exceptions to conveyance and warranty'"). Although the Texas Supreme Court has explained that "in general, the principal function of a subject-to clause in a deed is to protect a grantor against a claim for breach of warranty when some mineral interest is already outstanding," the Court also recognized "that subject-to clauses are widely used for other purposes." *Wenske*, 521 S.W.3d at 796; *see Cockrell v. Texas Gulf Sulphur Co.*, 299 S.W.2d 672, 676 (Tex. 1956) (noting that "these 'subject to' clauses were made not only as protection against her warranty, but also to incorporate the existing oil, gas and mineral leases, etc. into her deed to defendant"). Thus, rather than just apply the general "principal function" of the clause, the Court focused on "[g]iving the words of this deed their plain meaning, reading it in its entirety, and harmonizing all of its parts" to "ascertain the parties' intent as expressed in the language of the deed." *Wenske*, 521 S.W.3d at 796, 798. Accordingly, to determine the construction and function of the subject-to clause at issue, "we begin by attempting to ascertain the parties' intent as expressed in the language of the deed" and "generally, if we can ascertain their intent, that should also be the end of our analysis." *Id.* at 794.

Applying this standard, SJWTX has not established as a matter of law that in the 2008 Deed the parties unambiguously intended that the subject-to clause only protects the

13

grantor on its warranty of title. The 2008 Deed expressly made the subject-to clause applicable to both the conveyance and the warranty: "This conveyance and the warranties of title given herein are made subject to the following . . . ." And "[w]ith respect to a conveyance of an interest in real property, the term 'subject to' is a term of qualification, meaning 'subordinate to,' 'subservient to,' or 'limited by.'" *Smith v. Huston*, 251 S.W.3d 808, 823 (Tex. App.—Fort Worth 2008, pet. denied); *see Wenske*, 521 S.W.3d at 796 (noting "subject to" in its ordinary sense means "subordinate to," "subservient to," or "limited by"). The subject-to clause at issue here did not merely list the recorded document to which the conveyance was made subject to, but expressly specified the right to which the conveyance was made subject to: "This conveyance . . . [is] made subject to the following . . . Right of annexation to the terms, conditions, provisions, easements, restrictions, reservations and other matters set out in the [2000 Declaration] recorded in County Clerk's File . . . ." Additionally, it was not the subject-to clause that created the affirmative annexation right to which the conveyance was subject to—the 2000 Declaration created that right. *See Smith*, 251 S.W.3d at 823 (noting that "subject to" "should not be interpreted to give a grantee rights in addition to an already stated scope of conveyance" but rather conveyed property subject to certain conditions "is burdened by those conditions"); *see also Naumann v. Lee*, No. 03-11-00066-CV, 2012 WL 1149290, at *5 (Tex. App.—Austin Apr. 5, 2012, pet. denied) (mem. op.) ("The term 'subject to' is used to define the estate conveyed and its nature, extent, and character but creates no affirmative rights."). "The law recognizes the right of parties to contract with relation to property as they see fit, provided they do not contravene public policy and their contracts are not otherwise illegal," *Tarr*, 556 S.W.3d at 279 (quoting *Curlee v. Walker*, 244 S.W. 497, 498 (Tex. 1922)), and "Texas law has stated that 'subject to' language is a term of qualification and limits the estate granted," *Hawkins*

14

*v. Ehler*, 100 S.W.3d 534, 548 (Tex. App.—Fort Worth 2003, no pet.). SJWTX failed to establish as a matter of law that the subject-to clause unambiguously did not operate to limit the estate granted by making the conveyance subject to the Declarant's annexation rights under the 2000 Declaration.

Because SJWTX failed to meet its burden to establish as a matter of law that the 2008 Deed expressed the unambiguous intentions of Lantana Development and Dirt Dealers to transfer the property free and clear of the right of annexation, SJWTX also did not establish as a matter of law that Dirt Dealers could create an easement on the property free and clear of that right. *See* Tex. Prop. Code § 5.003(a) ("An alienation of real property that purports to transfer a greater right or estate in the property than the person making the alienation may lawfully transfer alienates only the right or estate that the person may convey."); *Carrithers v. Terramar Beach Cmty. Improvement Ass'n*, 645 S.W.2d 772, 774 (Tex. 1983) ("[A]n easement may not create a right or interest in a grantee's favor which the grantor himself did not possess."); *cf. Marcus Cable Assocs. v. Krohn*, 90 S.W.3d 697, 700 (Tex. 2002) ("While the common law recognizes that certain easements may be assigned or apportioned to a third party, the third party's use cannot exceed the rights expressly conveyed to the original easement holder.").[8] Thus, SJWTX

---

[8] A buyer who "purchases for value and without notice" "takes the land free from the restriction." *Tarr v. Timberwood Park Owners Ass'n*, 556 S.W.3d 274, 281 (Tex. 2018) (quoting *Davis v. Huey*, 620 S.W.2d 561, 566 (Tex. 1981)). But here, the 2012 Easement expressly references the recorded 2008 Deed—"Grantor owns the property known as that certain 86.289 acre tract . . . and being more particularly described in a deed to Dirt Dealers [], as recorded in [listing document number of the recorded 2008 Deed]"—and the 2008 Deed expressly references the right of annexation as found in the recorded 2000 Declaration. *See* Tex. Prop. Code § 13.002 ("An instrument that is properly recorded in the proper county is: (1) notice to all persons of the existence of the instrument . . . ."); *Cooksey v. Sinder*, 682 S.W.2d 252, 253 (Tex. 1984) (per curiam) ("A purchaser is charged with knowledge of the provisions and contents of recorded instruments. Purchasers are also charged with notice of the terms of deeds which form an essential link in their chain of ownership." (citations omitted)); *Sides v. Saliga*,

has not established as a matter of law that when the 2013 Notice was recorded, annexing Unit 8 "to the terms, conditions, provisions, easements, restrictions, reservations and other matters set out in the [2000 Declaration]" pursuant to the subject-to clause in the 2008 Deed, the annexation did not apply to its 2012 Easement.[9]

We therefore sustain Lantana Ridge's first issue that the trial court erred in granting SJWTX's motion for summary judgment as to its UDJA counterclaim and ordering a take nothing summary judgment on Lantana Ridge's claims that are based on the trial court's conclusion that the 2000 Declaration does not apply to SJWTX's easement. Accordingly, we do not reach Lantana Ridge's alternative second issue regarding the doctrine of implied reciprocal negative easement.

**Attorney's Fees**

Because we have sustained Lantana Ridge's first issue and are remanding the case, a determination as to attorney's fees is premature and we therefore reverse the award. *See*

---

No. 03-17-00732-CV, 2019 WL 2529551, at *7 (Tex. App.—Austin June 20, 2019, pet. denied) (mem. op.) ("Chain of title refers to the documents which show the successive ownership history of the land. The chain of title is the successive conveyances, commencing with the patent from the government, each being a perfect conveyance of the title down to and including the conveyance to the present holder." (quoting *Munawar v. Cadle Co.*, 2 S.W.3d 12, 20 (Tex. App.—Corpus Christi 1999, pet. denied))).

[9] For the first time on appeal, SJWTX argues that the 2000 Declaration does not apply because Dirt Dealers—not Lantana Development—executed and recorded the 2013 Notice. According to SJWTX, Dirt Dealers is not the Declarant under Section 2.01 of the 2000 Declaration, which provides that "Declarant shall record a Notice of Addition of land describing the properties to be made subject to the terms of this Declaration" and defines "Declarant" as "Lantana Development, LLC, its assignees and other lawful successors in interest." Lantana Ridge claims that Dirt Dealers is Lantana Development's assignee. But we need not resolve this dispute because SJWTX had to establish in its motion that "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law *on the issues expressly set out* in the motion or in an answer or any other response." Tex. R. Civ. P. 166a(c) (emphasis added). SJWTX did not raise this issue in its motion, answer, or response.

*Schroeder v. HB & Assocs.*, No. 05-01-00183-CV, 2002 WL 1494351, at *4 (Tex. App.—Dallas July 15, 2002, no pet.) (mem. op.) (holding that "[b]ecause we are remanding the issue of unliquidated damages to the trial court, any determination of attorney's fees is premature" and reversing attorney's fees award); *Hoffman, McBryde & Co. v. Heyland*, 74 S.W.3d 906, 913 (Tex. App.—Dallas 2002, pet. denied) (reversing trial court's erroneous grant of motion for summary judgment; noting "in view of our decision, any award of attorneys' fees is premature"; reversing award of attorney's fees; and remanding case for further proceedings).

## CONCLUSION

Because Lantana Ridge did not challenge on appeal the trial court's take nothing summary judgment rulings on its nuisance and Texas Administrative Code claims, we affirm the order as to those rulings. We do not disturb the trial court's ruling in its order denying Lantana Ridge's motion for summary judgment as it is not within the scope of our review. *See Feldman*, 977 S.W.2d at 569. In all other respects, we reverse the trial court's final judgment order and remand the case for further proceedings consistent with this opinion.

_____

Melissa Goodwin, Justice

Before Justices Goodwin, Kelly, and Smith

Affirmed in Part; Reversed and Remanded in Part

Filed: April 16, 2020

17