

# In the
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-23-00090-CV

VALENCE OPERATING COMPANY, Appellant

V.

BRADLEY DAVIDSON AND DEBRA SMITH, Appellees

On Appeal from the 123rd District Court
Panola County, Texas
Trial Court No. 2019-339

Before Stevens, C.J., van Cleef and Rambin, JJ.
Memorandum Opinion by Justice Rambin

# MEMORANDUM OPINION

This oil-and-gas case regarding a tract in Panola County turns on the meaning of this provision in a 1964 deed: "all Oil, Gas and other Minerals have been excepted and reserved by former owners."

Valence Operating Company (Valence) contends that "excepted and reserved by former owners" points back in the chain of title to a prior exception and reservation, specifically, the 1956 deed by which the 1964 grantors obtained their interests. The 1956 grantors were grandmother, Myrtle Briggs, and her grandson, Jackie Ray Briggs. Their 1956 deed conveyed the surface in fee, along with a one-half interest in the minerals, subject to a life estate in that mineral interest reserved to Myrtle. In Valence's view, the provision at issue in the 1964 deed was an exception to both conveyance and warranty in the 1964 deed, but only to the extent of the exception and reservation in the 1956 deed (respectively, the half of the minerals not conveyed in 1956 and Myrtle's life estate created by the 1956 deed). Valence contends that the result is that the 1964 grantors (i.e., the 1956 grantees, namely Edmond E. Coleman and his wife, Mildred Coleman) conveyed in 1964 what they had gotten in 1956: the surface in fee and a vested remainder in one-half of the minerals. Valence claims mineral-interest ownership through the 1964 grantees, Paul and Eleanor Carter.

Bradley Davidson and Debra Smith claim mineral-interest ownership through the surviving 1964 grantor, Mildred. In 2012, Mildred deeded the mineral interest to Davidson and Smith's predecessor-in-interest.

2

During a jury trial, Davidson and Smith moved for directed verdict on their trespass to try title, conversion, and estoppel by deed claims. The trial court granted the motion for directed verdict, dismissed the jury, found that Davidson and Smith owned the disputed mineral interest, and awarded them a one-eighth royalty interest on production of the mineral estate.

On appeal, Valence argues that the trial court erred by quieting title in favor of Davidson and Smith. By cross-appeal, Davidson and Smith argue (1) that the trial court should have awarded them a one-fifth royalty interest; (2) that the trial court should have directed verdict on their remaining claims for breach of contract, unjust enrichment, declaratory judgment, and money had and received; and (3) that the trial court should have permitted discovery of certain documents withheld by Valence during discovery based on attorney-client and work-product privileges.

We agree with Valence and find that the trial court erred by quieting title in favor of Davidson and Smith. As a result, we reverse, we render judgment for Valence regarding construction of the deed, and we remand to the trial court for further proceedings consistent with that construction. Because we construe the deed in favor of Valence, we deny the first two cross-points urged by Davidson and Smith. As for the cross-point complaining of the trial court's discovery rulings following an in camera inspection, we overrule it because the record does not contain the documents at issue.

## I.   Factual and Procedural Background

The parties both claim to own the same interest in the oil, gas, and minerals within a 64.5-acre tract of land located in Panola County.[1]  In order to understand the dispute more fully, we discuss the history of the Property's conveyances.

---

[1]We refer to the following property description of the 64.5-acre tract as "the Property":

TRACT ONE:

All that certain tract or parcel of land, situated in Panola County, Texas, and being a part of the J. B. Butler Headright Survey and also being situated about seven miles NE from the town of Beckville, Texas, on south side of Grand Bluff Road; and

BEGINNING at a corner of the James Briggs old homestead at an iron stake in said road at the mouth of a lane between the said James Briggs homestead and Joe Lampin's Northwest corner;

THENCE S 34 W with the center of said road, 126 vrs. to Lampin's SW corner, an iron stake at turn of lane;

THENCE S 49 ½ E with the lane, 155 vrs[.] to another corner of Joe Lampin's being the SE corner of his 4 acre tract, a stake in the turn of the lane;

THENCE S 52 W 396 vrs[.] to a stake on the East line of the Brasher tract, now owned by R. A. Metcalf, a Sweet Gum brs[.] S 80 E 10 2/5 vrs[.] marked Z;

THENCE with the said Brasher tract now owned by R. A. Metcalf east line, N 35 W at 630 vrs[.] pass corner of L. R. Metcalf tract and at 968 vrs. Metcalf's inner corner, a pine brs[.] S 57 W 5 2/5 vrs[.] a red oak S 36 W 9-2/5 vrs[.] marked Z;

THENCE N 55 E with Metcalfe[']s line, 318 vrs[.] to a stake on the North side of Grand Bluff Road, a Red Oak brs. N 11W 8½ vrs[.] marked X;

THENCE with the Grand Bluff road, S 44 E 520 vrs[.] and S 52 ½ E 253 vrs. to place of BEGINNING, containing 71 ½ acres of land, more or less;

LESS, HOWEVER, 7 acres more or less, heretofore sold out of the SE corner of said tract to Harvey Briggs, leaving the remainder, of 64 ½ acres, more or less.

## A. Overlapping Conveyances Create Divergent Interests

The parties agree that the common source of their claims to the disputed mineral interest rests in a 1913 conveyance of the Property from James Briggs to E.L. Briggs. In 1951, E.L. Briggs and his wife, Myrtle, sold the surface interest to their grandson, Jackie, while "retain[ing] all the mineral lease and royalty" interests, which severed the mineral and surface estates.

The parties further agree that E.L. died after that conveyance, but before 1956, which resulted in a pre-1956 division of the mineral interests, with one-half of the mineral interests going to E.L's heirs and one-half going to Myrtle.

On November 5, 1956, Myrtle and Jackie conveyed the Property to Edmond in a document the parties title "the Briggs Deed." The Briggs Deed, recorded in Volume 396, Page 501, of the Panola County Official Public Records,[2] contained the following language:

> IT IS UNDERSTOOD, HOWEVER, that all of the oil, gas and other minerals in and under the hereinbefore described tract of land are excepted and reserved unto Mrs. Myrtle Briggs, for and during her lifetime, . . . and upon the death of the said Mrs. Myrtle Briggs, such minerals shall pass and vest in the Grantee herein, his heirs and assigns, in fee simple title.

On October 21, 1964, Edmond and Mildred granted the Property to Paul Carter and his wife, Eleanor Carter, by warranty deed recorded in Volume 474, Page 194, of the Panola County Official Public Records. The parties refer to that deed as the "Coleman Deed." The Coleman Deed describes the premises conveyed as "all that certain Tract or Parcel of land situated in Panola County, Texas, and being a part of the J.B. Butler Headright Survey, and also being situated about seven miles N.E. from the town of Beckville, Texas on the South side of the

---

[2]A properly recorded deed "provides all persons, including the grantor, with notice of the deed's contents." *Cosgrove v. Cade*, 468 S.W.3d 32, 34 (Tex. 2015).

Grand Bluff Road" as described by metes and bounds. The Coleman Deed states: "IT IS UNDERSTOOD AND AGREED that all Oil, Gas and other Minerals have been excepted and reserved by former owners." The Coleman Deed has the following warranty language:

> TO HAVE AND TO HOLD the above described premises, together with all and singular the rights and appurtenances thereto in anywise belonging unto the said
>
> - - - - - PAUL CARTER and wife, ELEANOR CARTER, their - - - - -
>
> heirs and assigns forever and we do hereby bind ourselves, our heirs, executors, and administrators, to Warrant and Forever Defend, all and singular, the said premises unto the said
>
> - - - - - - PAUL CARTER and wife, ELEANOR CARTER, their - - - - - -
>
> heirs and assigns . . . .

After the Coleman Deed was recorded, Myrtle died in 1965, ending the life estate "excepted and reserved unto [her]" in the Briggs Deed.

### B. The Path to Davidson's and Smith's Interests

On February 20, 2012, by deed recorded in Volume 1701, Page 353, of the Panola County Official Public Records, Mildred, believing she had the mineral estate to the Property, conveyed her interests by a mineral deed, which the parties call "the Dickerson Deed." Specifically, Mildred conveyed the following to Charles C. Dickerson:

> All of my right, title and interest in and to all coal and lignite lying in, on, and under and that may be produced from [the Property], and all of my right title and interest in and to all of the oil, gas, and other liquid and gaseous hydrocarbons produced in conjunction with said oil and gas, lying in and under and that may be produced from [the Property] . . . .[3]

---

[3]In the Dickerson Deed, Mildred made the following "Exceptions to Conveyance and Warranty:"

On January 22, 2013, Dickerson granted Smith "One Quarter (1/2) [sic] of the coal and lignite lying in, on and under and that may be produced from the following tracts of land" and "One Quarter (1/2) [sic] of the oil, gas, and other liquid and gaseous hydrocarbons produced in conjunction with said oil and gas, lying in and under and that may be produced from [the Property]." The Smith Deed was recorded in Volume 1741, Page 63, of the Panola County Official Public Records. To correct the scrivener's error in the Smith Deed, in February 2017, Dickerson filed a "Correction of [the] Mineral Deed" by which Dickerson clarified that he had conveyed to Smith "One Half (1/2) of the coal and lignite" and "One Half (1/2) of the oil, gas, and other liquid and gaseous hydrocarbons produced in conjunction with said oil and gas" in and under the Property. By separate deed to Davidson, filed in Volume 1907, Page 242, of the Panola County Official Public Records, Dickerson granted to Davidson the other one-half mineral interest in the Property.

---

Save and except, that the Grantor herein reserves, and it is expressly agreed that she should have, for herself and her assigns, the full possession, benefit and use of all the royalties, delay rentals, and revenues paid for the production of all coal and lignite, and all oil, gas, and other mineral lying in and under, and that may be produced from the described real property, for and during her natural life. Grantee shall have the executive right to execute oil, gas, and mineral leases, and coal and lignite leases covering the coal, lignite and oil, gas, and other minerals herein conveyed, but however Grantor shall receive the bonuses paid therefor.

Grantor, for the same Consideration and subject to the Reservations from Conveyance and the Exceptions to Conveyance, grants, sells, and conveys to Grantee, without express or implied warranty, the strips or gores, if any, between the Property and abutting properties and land lying in or under any public thoroughfare, opened or proposed, abutting or adjacent to the Property, together with all and singular the rights and appurtenances thereto in any way belonging, to have and to hold it to Grantee and Grantee's heirs, successors, and assigns forever. All warranties that might arise by common law as well as the warranties in section 5.023 of the Texas Property Code (or its successor) are excluded as to the property conveyed by this paragraph.

Mildred died in 2017.

## C. The Path to Valence's Interest

Valence's claimed interest begins with the Coleman Deed's conveyance to Paul and Eleanor. In 1991, Paul and Eleanor conveyed by warranty deed all of their right, title, and interest in the Property to Stephen E. Carter and Paula Carter Seewald. On July 11, 2012, Stephen and Paula, by mineral deed, granted to Valence "all of [their] right, title, interests, and estates, in and to all the oil, gas[,] and other liquid and gaseous hydrocarbons in and under and that may be produced from [the Property]."[4]

## D. Procedural History

Davidson and Smith sued Valence for trespass to try title, declaratory judgment, conversion of their mineral interests, money had and received, unjust enrichment, promissory estoppel, and breach of contract.[5]

Before trial, the parties filed the following written stipulation: "Plaintiffs and Valence stipulate and agree that Plaintiffs and Valence each claim to own a 50% mineral interests [sic] in and to the . . . Property, with Plaintiffs claiming such ownership by through and under Mildred Coleman and Valence claiming the same interest by, through and under the Carters."

At trial, Valence, as defendant, sought directed verdict as follows:

Your Honor, at this time Valence would move for a directed verdict. And the grounds are as follows: Basically Plaintiffs have asserted this is a Trespass to Try

---

[4]The mineral deed to Valence states, "THIS MINERAL DEED IS DELIVERED BY GRANTORS AND ACCEPTED BY GRANTEE WITHOUT ANY COVENANTS OR WARRANTIES OF TITLE OR OTHERWISE BY GRANTORS, EITHER EXPRESS OR IMPLIED, ALL SUCH WARRANTIES BEING EXPRESSLY DISCLAIMED BY GRANTORS."

[5]Davidson and Smith also asserted fraud claims against Valence. Those claims were dismissed for lack of standing, and that dismissal is not challenged on appeal.

8

Title case. As a Plaintiff in a Trespass to Try Title case, they have to show superior title through a chain of title. . . .

. . . [T]he crux of their superior title claim is that the 1964 Coleman to Carter deed, that there was a reservation in that deed to Mildred Coleman that they eventually succeeded to. So if there's no reservation, they lose. They don't have superior title.

The trial court denied Valence's motion for a directed verdict.

Davidson and Smith then sought directed verdict as follows:

Your Honor, at this time Plaintiff moves the Court for an instructed verdict in its favor on the grounds that the reservation in the deed from Ms. Coleman to their predecessor in title is unambiguous. It is a reservation. And for the further ground that the Defendants were estopped by deed to contest and go behind that reservation.[6]

The trial court directed verdict in Davidson and Smith's favor, specifically finding that in the Coleman Deed, Mildred had reserved a life estate in the mineral interest for herself. On appeal, Valence argues that the trial court erred by directing verdict on this issue.

## II.     Standards for Review and Deed Construction

"We review a trial court's grant of directed verdict de novo, using the legal sufficiency standard appellate courts apply to no-evidence summary judgments." *City of Baytown v. Schrock*, 645 S.W.3d 174, 178 (Tex. 2022) (footnote omitted) (citation omitted) (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 810, 823 (Tex. 2005)). "A trial court properly grants a directed verdict when no evidence supports a vital fact or the evidence fails to state a claim as a matter of law." *Id.* (citing *City of Keller*, 168 S.W.3d at 810–11, 814–16). Since both parties moved for directed verdict on the same issue, this is akin to the situation where "both parties

---

[6]Davidson and Smith further sought a directed verdict on the amount of royalty due to them, a question we do not reach.

move for summary judgment and the trial court grants one motion and denies the other." *Rosetta Res. Operating, LP v. Martin*, 645 S.W.3d 212, 218 (Tex. 2022) (quoting *S. Crushed Concrete, LLC v. City of Houston*, 398 S.W.3d 676, 678 (Tex. 2013)). In such circumstances, "we review both sides' [directed verdict] evidence and render the judgment the trial court should have rendered." *Id.* (quoting *S. Crushed Concrete, LLC*, 398 S.W.3d at 678).

Both parties contend that the Briggs and Coleman Deeds are unambiguous, and we agree. "The construction of an unambiguous deed is a question of law for the court," which we review de novo. *Wenske v. Ealy*, 521 S.W.3d 791, 794 (Tex. 2017) (quoting *Luckel v. White*, 819 S.W.2d 459, 461 (Tex. 1991)).

"When construing an oil-and-gas deed, standard rules of contract construction apply." *Nettye Engler Energy, LP v. BlueStone Nat. Res. II, LLC*, 639 S.W.3d 682, 689 (Tex. 2022). We apply these rules bearing in mind that "[r]ecording deeds and similar instruments is purposefully a *public* enterprise designed to elicit public reliance." *Van Dyke v. Navigator Grp.*, 668 S.W.3d 353, 361 (Tex. 2023). The property rights conveyed by deeds would be "far less valuable without a consistent and stable judicial construction of terms used in deeds." *Id.*

"Our objective is to 'ascertain the true intentions of the parties as expressed in the writing itself,' beginning with the instrument's express language." *Nettye Engler Energy, LP*, 639 S.W.3d at 689 (quoting *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 333 (Tex. 2011)). We look to what the words of the deed meant when they were used. *Van Dyke*, 668 S.W.3d at 360 ("Whatever that meaning was then remains the meaning today."). "[W]e consider the entire writing and attempt to harmonize the provisions so all are given effect

10

and none are rendered meaningless." *Nettye Engler Energy, LP*, 639 S.W.3d at 690. "[W]e presume the parties intended every clause to have some effect." *Id.*

### III.    We Sustain Valence's First Point of Error

Valence argues that the language in the 1964 Coleman Deed, which states, "IT IS UNDERSTOOD AND AGREED that all Oil, Gas and other Minerals have been excepted and reserved by former owners," is not a reservation.   Instead, Valence argues that the language points back to the 1956 Briggs deed and narrows the scope of the 1964 conveyance and warranty, but only to the extent of the 1956 reservation.  ("It excepted Mrs. Briggs' life estate and her children's 50% mineral interest from the conveyance and protected the Colemans against warranty claims due to outstanding oil and gas interests in these third parties, but *reserved nothing* to the Colemans, including the remainder interest associated with Mrs. Briggs' life estate.").  Based on our prior opinion in *Roberson v. El Paso Exploration and Production Co., L.P.*, we agree.  *Roberson v. El Paso Expl. & Prod. Co., L.P.*, No. 06-12-00017-CV, 2012 WL 3805956, at *1 (Tex. App.—Texarkana Sept. 4, 2012, no pet.) (mem. op.)

Our analysis turns on whether the grantors in the Coleman Deed reserved an interest for themselves or excepted any portion of the mineral estate in the Property from their conveyances. "The words 'exception' and 'reservation,' though at times used interchangeably, each has its own separate meaning." *Cook v. Nissimov*, 580 S.W.3d 745, 752 (Tex. App.—Houston [14th Dist.] 2019, pet. denied) (quoting *Klein v. Humble Oil & Ref. Co.*, 67 S.W.2d 911, 915 (Tex. App.—Beaumont 1934), *aff'd*, 86 S.W.2d 1077 (Tex. 1935)).  "A reservation is the creation of a new right in favor of the grantor." *Id.* (citing *Patrick v. Barrett*, 734 S.W.2d 646, 647 (Tex.

11

1987)). "An exception, by contrast, operates to exclude some interest from the grant." *Id.* (citing *Wenske*, 521 S.W.3d at 806). "[A]ny 'reservation' must be 'by clear language' and cannot be implied, and a reservation is a form of 'exception' through which the grantor excludes for itself a portion of that which would otherwise fall within the deed's description of the interest granted." *Piranha Partners v. Neuhoff*, 596 S.W.3d 740, 748 (Tex. 2020) (quoting *Perryman v. Spartan Tex. Six Cap. Partners, Ltd.*, 546 S.W.3d 110, 119 (Tex. 2018)).

In *Roberson*, we found that language in a deed stating, "It being understood and agreed that all oil, gas, and other minerals . . . in and under the above described tract have heretofore been reserved and excepted," 2012 WL 3805956, at *1, did not reserve any mineral interest, but "merely recited that mineral interests were 'heretofore reserved and excepted,'" *id.* at *4. Similarly, the Coleman Deed merely notified the Carters of the existence of a prior reservation, and "the only effect of th[at] recitation would be to exempt the [Colemans] from liability on their warranty of title had there been a previous reservation and exception." *Id.*[7]

Accordingly, we find that the trial court erred by directing verdict in Davidson and Smith's favor. We sustain Valence's first point of error on appeal.

---

[7]This resolves, and rejects, Davidson and Smith's contentions that "former owners" constitutes a reservation to the Colemans and, alternatively, that "former owners" is a non-operative recital. This further resolves, and rejects, Davidson and Smith's estoppel-by-deed argument that Valence cannot "go behind" a 1964 reservation to the Colemans. As set out above, the language at issue was not a reservation to the Colemans. In their brief on appeal, Davidson and Smith assert that, "at the time of the 1964 deed, the Colemans did not own any oil, gas, or mineral rights to the 64.5 acres. Therefore, the Colemans simply could not have actually conveyed the one[-]half oil, gas, and mineral interest at the time of the 1964 deed." Similarly, Davidson and Smith urge estoppel-by-deed on the premise that "[the language at issue] was a recital that the grantors lacked ownership of the minerals." Davidson and Smith sought directed verdict on the basis that the Colemans had a conveyable interest, but they reserved that interest to themselves. Davidson and Smith did not seek directed verdict on the basis that the Colemans lacked a conveyable interest in the minerals. We find this issue unpreserved. *See Li v. Pemberton Park Cmty. Ass'n*, 631 S.W.3d 701, 704 (Tex. 2021) (per curiam) ("The question is whether Li sufficiently preserved the issue . . . by arguing the issue's substance, even though she did not specify the statutory subpart on which she now focuses or couch her argument in the subpart's terminology.").

**IV.    We Overrule the Points of Error Raised by Cross-Appeal**

By way of cross-appeal, Davidson and Smith challenge (1) the trial court's award of a one-eighth royalty; (2) the lack of a directed verdict on their breach of contract, unjust enrichment, declaratory judgment, and money had and received claims; and (3) the trial court's ruling that certain documents withheld during discovery were subject to the attorney-client and work-product privileges.

The first two cross-points urged by Davidson and Smith depend on the question of deed construction being resolved in their favor.  Thus, as a result of our holding reversing the trial court's decision to quiet title for Davidson and Smith, we reject their first two cross-points.

As for their last cross-point, Davidson and Smith seek review of the trial court's ruling, following an in camera inspection, that a title opinion and two emails withheld by Valence during discovery were protected by attorney-client and work-product privilege.  Davidson and Smith, who have not seen the documents, ask this Court to review the trial court's decision.  The records have not been tendered to this Court under seal.

"In Texas, when exhibits are submitted to the trial court in camera, a party must request that the exhibits be carried forward under seal so that an appellate court can review the exhibits and evaluate the issues presented on appeal."  *Fallon v. MD Anderson Physicians Network*, No. 01-18-00813-CV, 2019 WL 4019687, at *8 (Tex. App.—Houston [1st Dist.] Aug. 27, 2019, no pet.) (mem. op.) (citing *Pope v. Stephenson*, 787 S.W.2d 953, 953 (Tex. 1990) (orig. proceeding) (per curiam); *In re Trujillo*, No. 08-13-00185-CV, 2015 WL 799439, at *1 (Tex. App.—El Paso Feb. 25, 2015, orig. proceeding) (mem. op.); *Lesher v. Coyel*, 435 S.W.3d 423,

13

431–32 (Tex. App.—Dallas 2014, pet. denied); *Humphreys v. Caldwell*, 881 S.W.2d 940, 944–45 (Tex. App.—Corpus Christi–Edinburg 1994, orig. proceeding)). "This is because the contents of the exhibits which have been protected must be made available to the appellate court in order for it to determine whether error has occurred." *Id.* (citing *Pope*, 787 S.W.2d at 953). "Simply put, without a record containing the in camera exhibits, we have nothing to review." *Id.* (citing *Lesher*, 435 S.W.3d at 431–32).

Because the title opinion and emails submitted to the trial court for in camera review are not contained in our appellate record, we must overrule Davidson and Smith's last cross-point.

## III.    Disposition

We find that the trial court erred by quieting title in favor of Davidson and Smith. As a result, we reverse and render judgment in favor of Valence regarding construction of the 1964 deed from the Briggs to the Colemans. We remand this matter to the trial court for further proceedings consistent with this opinion.

Jeff Rambin
Justice

Date Submitted:      September 12, 2024
Date Decided:       December 20, 2024

14