**Opinion filed March 27, 2025**



In The

# Eleventh Court of Appeals

_____

## No. 11-23-00200-CV

_____

**MICHAEL BRUCE VAUGHN, INDIVIDUALLY AND AS TRUSTEE OF THE G.D. AND SUE VAUGHN TRUST; AND LINDA NELL VAUGHN, Appellants**

**V.**

**SHELBY ISAACS VAUGHAN AND SHAINA ISAACS BOSTICK, Appellees**

**On Appeal from the 132nd District Court**

**Borden County, Texas**

**Trial Court Cause No. 1385**

**O P I N I O N**

Appellants Michael Bruce Vaughn, Individually and as Trustee of the G.D. and Sue Vaughn Trust, and Linda Nell Vaughn appeal the trial court's order denying their summary judgment motion and its order granting the summary judgment motion of Appellees Shelby Isaacs Vaughan and Shaina Isaacs Bostick. The parties'

summary judgment motions were based on their respective declaratory judgment actions, which required the trial court to determine whether a contested deed of trust secured a lien on mineral interests in addition to the surface estate of the subject property. We affirm.

*Factual and Procedural History*

Tony Mac Isaacs and Douglas Lynn Isaacs jointly owned half a section of land in Borden County. But on July 8, 2004, Tony and Douglas executed a partition deed, which conveyed the surface estate of the half section equally between them—the southeast quarter of the section [SE/4] was conveyed to Douglas and the northeast quarter [NE/4] was conveyed to Tony—while maintaining their mineral interest ownership "jointly in equal undivided shares." The partition deed further specified that each of them were granted the sole executive right[1] in their respective quarter sections. Accordingly, the partition deed excluded any partition of the half section's mineral interests and easements from the conveyance.

On August 19, 2004, Douglas and his wife, Debora Kay, executed a note secured by deed of trust over the property. In pertinent part, the preprinted form deed of trust stated:

> Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property situated in the State of Texas, County or Counties of Borden
>
> See attached Exhibit A for legal description.
>
> together with all rights (including the rights to mining products, gravel, oil, gas, coal[,] or other minerals), interests, easements, fixtures, hereditaments, appurtenances, and improvements now or later attached thereto, the rents, issues[,] and profits thereof, revenues and income therefrom, all water, water rights, and water stock pertaining thereto,

---

[1]"The executive enjoys the exclusive right to make and amend mineral leases and, correspondingly, to negotiate for the payment of bonuses, delay rentals, and royalties, subject to a duty of utmost good faith and fair dealing to non-executive interest holders." *Hysaw v. Dawkins*, 483 S.W.3d 1, 9 (Tex. 2016) (citing *KCM Fin. LLC v. Bradshaw*, 457 S.W.3d 70, 74–75 (Tex. 2015)).

and all payments at any time owing to Borrower by virtue of any sale, lease, transfer, or condemnation of any part thereof or interest therein (collectively called "the property").

"Exhibit A," which was attached on a separate page to the deed of trust, stated:

SURFACE ESTATE ONLY:

Being all of the Southeast One-fourth (SE/4) of Section Eight (8), Block Thirty-two (32), Township G North, T&P Ry. Co. Surveys, Borden County, Texas.

SUBJECT TO THE FOLLOWING EXCEPTIONS AND/OR RESERVATIONS:

(a)     All outstanding ownership in the oil, gas[,] and other minerals in, on[,] and under that may be produced from the described premises, as such outstanding interest are shown by the records of the County Clerk of Borden County, Texas;

(b)     Any outstanding oil, gas[,] and mineral lease or leases upon the premises, which lease or leases appear of record in the office of the County Clerk of Borden County, Texas; and

(c)     Any and all easements and/or rights-of-way which appear of record in the office of the County Clerk of Borden County, Texas, or which are visible and apparent upon the ground.

Douglas and Debora subsequently defaulted on the "note,"[2] and the property was sold at a foreclosure sale and conveyed by a "Deed by Substitute Trustee" (the substitute trustee's deed) to the Brad and Bruce Vaughn Partnership. Appellees are the heirs of Douglas. Both parties claimed ownership in the mineral interests underneath the SE/4. Appellants argue that the language in the deed of trust that Douglas and Debora executed conveyed Douglas's interest in the mineral estate

---

[2]Although the deed of trust specifies that there were five "promissory notes, assumption agreements, and/or shared appreciation agreements" being secured, it provided that such notes or agreements would be collectively referred to as the "note" in the instrument.

while Appellees argue that it's reference to "Surface Estate Only" expressed an intent to only convey the surface estate.

To their respective summary judgment motions, both parties attached a copy of the partition deed, the deed of trust with Exhibit A, and the substitute trustee's deed. Each party argued that deed of trust and instrument construction rules supported summary judgment in their favor.

*Standard of Review*

We review a trial court's grant of a summary judgment de novo. *Concho Res., Inc. v. Ellison*, 627 S.W.3d 226, 233 (Tex. 2021) (citing *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005)). To prevail under the traditional summary judgment standard, the movant has the burden to establish that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(a), (c); *ConocoPhillips Co. v. Koopmann*, 547 S.W.3d 858, 865 (Tex. 2018); *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 216 (Tex. 2003). If the movant establishes its summary judgment burden, the burden shifts to the nonmovant to present evidence that raises a genuine issue of material fact that would preclude the grant of summary judgment. *Amedisys, Inc. v. Kingwood Home Health Care, LLC*, 437 S.W.3d 507, 510–11 (Tex. 2014); *M.D. Anderson Hosp. & Tumor Inst. v. Willrich*, 28 S.W.3d 22, 23 (Tex. 2000). To determine if a genuine issue of material fact exists, we review the evidence in the light most favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *KMS Retail Rowlett, LP v. City of Rowlett*, 593 S.W.3d 175, 181 (Tex. 2019); *Knott*, 128 S.W.3d at 215.

Where, as here, both parties file motions for summary judgment, and the trial court grants one motion and denies the other, we review all of the summary judgment evidence, determine the issues presented, and render the judgment the trial court should have rendered. *Lightning Oil Co. v. Anadarko E&P Onshore, LLC*, 520

S.W.3d 39, 45 (Tex. 2017); *Merriman v. XTO Energy, Inc.*, 407 S.W.3d 244, 248 (Tex. 2013); *Solaris Oilfield Site Servs. Oper LLC v. Brown Cnty. Appraisal Dist.*, 688 S.W.3d 918, 924 (Tex. App.—Eastland 2024, no pet. h.); *Pacer Energy, Ltd. v. Endeavor Energy Res., LP,* 675 S.W.3d 390, 393 (Tex. App.—Eastland 2023, pet. denied).

*Applicable Law*

This case concerns the proper interpretation of conveyance documents. A deed of trust is governed by the same rules applied to other written instruments, such as contracts or deeds. *Fin. Freedom Sr. Funding Corp. v. Horrocks*, 294 S.W.3d 749, 753 (Tex. App.—Houston [14th Dist.] 2009, no pet.) (citing *Robinson v. Saxon Mortg. Servs., Inc.*, 240 S.W.3d 311, 313 (Tex. App.—Austin 2007, no pet.)). In construing the meaning of a written instrument, our primary duty is to ascertain the intent of the parties as provided in the four corners of the document. *Luckel v. White*, 819 S.W.2d 459, 461 (Tex. 1991). To do this, we must examine and consider the entire writing in an effort to harmonize and give effect to all the provisions of the instrument, even if different parts of the instrument appear inconsistent or contradictory. *Id.* at 462; *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983). We must assume the parties to the instrument intended every clause to have some effect; therefore, the language should be interpreted so that no provision is rendered meaningless. *See Luckel*, 819 S.W.2d at 462; *Coker*, 650 S.W.2d at 393. Each word and phrase should be given its plain, grammatical meaning unless doing so would clearly defeat the parties' intent. *Moon Royalty, LLC v. Boldrick Partners*, 244 S.W.3d 391, 394 (Tex. App.—Eastland 2007, no pet.). No provision of the instrument should be disregarded unless an irreconcilable conflict exists that causes one part of the instrument to destroy another part. *Id.* The Texas Supreme Court has "eschew[ed] reliance on mechanical or bright-line rules as a substitute for an intent-focused inquiry rooted in the instrument's words," and it has "rejected

mechanical rules of construction, such as giving priority to certain clauses over others, or requiring the use of so-called 'magic words.'" *Wenske v. Ealy*, 521 S.W.3d 791, 794 (Tex. 2017); *Hysaw*, 483 S.W.3d at 13.

"[W]e endeavor to 'giv[e] the deed's words their plain meaning, reading it in its entirety, and harmonizing all of its parts.'" *ConocoPhillips Co. v. Hahn*, 704 S.W.3d 515, 531 (Tex. 2024) (quoting *Wenske*, 521 S.W.3d at 797). "When part of a deed's property description is incorrect, we will disregard that part as 'surplusage' and enforce the deed if the remainder of the description identifies the land with sufficient certainty." *Piranha Partners v. Neuhoff*, 596 S.W.3d 740, 745 n.12 (Tex. 2020) (quoting *Rsrv. Petroleum Co. v. Harp*, 226 S.W.2d 839,841 (1950)). "[It] is not the actual intent of the parties that governs, but the actual intent of the parties *as expressed in the instrument as a whole*, without reference to matters of mere form, relative position of descriptions, technicalities, or arbitrary rules." *Luckel*, 819 S.W.2d at 462 (internal quotation marks omitted).

If the instrument of conveyance "refers to another instrument which contains a proper description of the property, such [] instrument may be looked to in aid of the description." *Hahn*, 704 S.W.3d at 533 (quoting *Maupin v. Chaney*, 163 S.W.2d 380, 383 (Tex. 1942)). "Thus, it is sufficient if the instrument 'furnish[es] within itself *or by reference to other identified writings then in existence*, the means or data by which the particular land [or interest in land] to be conveyed may be identified with specific certainty.'" *Id.* (quoting *Pick v. Bartel*, 659 S.W.2d 636, 637 (Tex. 1983)).

"Whether a contract is ambiguous is a question of law for the court to decide." *Friendswood Dev. Co. v. McDade & Co.*, 926 S.W.2d 280, 282 (Tex. 1996). To make this determination, the trial court must examine the deed as a whole in light of the circumstances present at the time of its execution. *Columbia Gas Transmission*

6

*Corp. v. New Ulm Gas, Ltd.*, 940 S.W.2d 587, 589 (Tex. 1996); *Savage v. Doyle*, 153 S.W.3d 231, 234 (Tex. App.—Beaumont 2004, no pet.).

If after applying the pertinent rules of construction, an instrument is subject to two or more reasonable interpretations, then the instrument is ambiguous, and a fact issue exists as to the parties' intent. *Columbia Gas*, 940 S.W.2d at 589. However, an ambiguity does not arise merely because the parties advance conflicting interpretations of the instrument's language; instead, for an ambiguity to exist, both interpretations must be reasonable. *Id.*

A written instrument is unambiguous when it is so worded that it can be given "a certain or definite legal meaning or interpretation." *Coker*, 650 S.W.2d at 393. The interpretation of an unambiguous instrument is a question of law, and we conduct a de novo review of the trial court's construction. *Altman v. Blake*, 712 S.W.2d 117, 118 (Tex. 1986); *Range Res. Corp. v. Bradshaw*, 266 S.W.3d 490, 493 (Tex. App.—Fort Worth 2008, pet. denied). When conducting a de novo review, we exercise our own judgment and redetermine each issue, affording no deference to the trial court's decision. *Quick v. City of Austin*, 7 S.W.3d 109, 116 (Tex. 1998); *Range Res. Corp.*, 266 S.W.3d at 492–93.

A deed will pass whatever interest the grantor has in the land, unless it contains language showing the intention to grant a lesser estate. *See Rahlek, Ltd. v. Wells*, 587 S.W.3d 57, 64 (Tex. App.—Eastland 2019, pet. denied). Thus, a "warranty deed will pass all of the estate owned by the grantor at the time of the conveyance unless there are reservations or exceptions [that] reduce the estate conveyed." *Graham v. Prochaska*, 429 S.W.3d 650, 655 (Tex. App.—San Antonio 2013, pet. denied) (quoting *Cockrell v. Tex. Gulf Sulphur Co.*, 299 S.W.2d 672, 675 (Tex. 1956)). "Property 'excepted' or 'reserved' under a deed is 'never included in the grant' and is 'something to be deducted from the thing granted, narrowing and limiting what would otherwise pass by the general words of the grant.'" *Id.* (quoting

*King v. First Nat'l Bank of Wichita Falls*, 192 S.W.2d 260, 262 (Tex. 1946)). Therefore, "[r]eservations must be made by 'clear language,' and courts do not favor reservations by implication." *Id.* "Exceptions must identify, with reasonable certainty, the property to be excepted from the larger conveyance." *Id.* at 655–56 (internal quotation marks omitted). Thus, "[a]s a general rule, exceptions are strictly construed against the grantor." *State v. Dunn*, 574 S.W.2d 821, 824 (Tex. App.—Amarillo 1978, writ ref'd n.r.e.).

Although, at times, the terms "exception" and "reservation" are used interchangeably, they have their own separate meaning. *Cook v. Nissimov*, 580 S.W.3d 745, 752 (Tex. App.—Houston [14th Dist.] 2019, pet. denied). A reservation is the creation of a new right in favor of the grantor. *Patrick v. Barrett*, 734 S.W.2d 646, 647 (Tex. 1987). An owner who wishes to reserve a right or easement from being conveyed with the property must express such reservation by clear and unambiguous language. *Holmstrom v. Lee*, 26 S.W.3d 526, 531 (Tex. App.—Austin 2000, no pet.). An exception, by contrast, operates to exclude some interest from the grant. *Wenske*, 521 S.W.3d at 806.

*Analysis*

We hold, and the parties agree, that the deed of trust is unambiguous. *See Friendswood Dev. Co.*, 926 S.W.2d at 282. Appellants argue that interpreting the deed of trust language to include mineral rights does not conflict with the description in Exhibit A, but instead "serves to clarify that the parties intended the Deed of Trust to not only cover the property described in Exhibit 'A' but to also cover all the Grantor's interest in mining products, gravel, oil, gas, coal[,] and other minerals." Appellees counter that the exhibit's limitation of "surface estate only" unambiguously narrows the conveyance to the surface estate, thereby excluding the mineral estate.

8

A. *Distinguishing Case Law Relied on by Appellants*

In *Davis v. Mueller*, the deed's pertinent language stated, "Grantor hereby conveys to Grantee *all* of the mineral, royalty, and overriding royalty interest owned by Grantor in Harrison County, *whether or not same is herein above correctly described*." 528 S.W.3d 97, 99 (Tex. 2017) (emphasis added). Appellants cite *Davis* in support of their position, wherein the Supreme Court of Texas held that "[a]ll means all" and the deed language conveyed all of the grantor's mineral interests in Harrison County. *Id.* at 102. The court held that the Mother Hubbard clause in question "cover[ed] small pieces that may have been overlooked or incorrectly described" in the deed's general granting clause. *Id.* However, the facts in *Davis* involved the construction of two clauses together but did not include a precise property description that specifically reserved and excluded from conveyance the mineral estate. *Id.* Thus, *Davis* is inapposite.

Appellants also rely on *Citation 2002 Inv. LLC v. Occidental Permian, Ltd.*, wherein the Eighth Court of Appeals considered whether an assignment of mineral interest was limited in depth or was an unlimited grant of the grantor's interest. 662 S.W.3d 550, 558 (Tex. App.—El Paso 2022), *aff'd*, 689 S.W.3d 899 (Tex. 2024). Because Appellants' briefs were submitted prior to the release of the supreme court's opinion in *Occidental Permian*, we will focus our attention on the supreme court's analysis of the issue.

In 1987, Shell Western had sold "all" of its mineral interest in property "described in EXHIBIT A" to Citation. *Occidental Permian*, 689 S.W.3d at 902. Exhibit A consisted of a spreadsheet that described the interests in various columns, some of which identified specific depths. *Id.* at 903–04. Additionally, the assignment included a clause that it was "subject to" the following:

> It is the intent of this ASSIGNMENT to transfer and convey to CITATION . . . all rights and interests now owned by SHELL

WESTERN . . . in the leases and other rights described herein, regardless of whether same may be incorrectly described or omitted from Exhibit A. . . . This paragraph shall not apply to any purchases or acquisitions by SHELL WESTERN hereafter when SHELL WESTERN acquires an interest in the properties described herein by giving new consideration therefor.

*Id.* at 902–03 (alterations in original). In 1997, Shell purported to assign all its interests in the same leases to Occidental Permian. *Id.* at 903. Shell again included an exhibit in the assignment, identified as "Exhibit A-1." *Id.* Exhibit A-1 was similar to Exhibit A, in that it included some of the interests described in the Citation assignment, but did not contain any depth descriptions. *Id.* Litigation subsequently ensued to determine which party held what rights in the interests assigned.[3] *Id.* at 902.

The supreme court relied on *Piranha Partners*, noting that both cases included an exhibit that included information and descriptions of the conveyed mineral interests. *Id.* at 905 (citing *Piranha Partners*, 596 S.W.3d at 744). However, in *Piranha Partners*, the exhibit did not expressly state whether the interest listed in it identified the scope of the interest conveyed. *Id.* (citing *Piranha Partners*, 596 S.W.3d at 746). Similarly, the exhibit in Citation's assignment "contain[ed] no language directing the proper method for reading its tables. Instead, it serially list[ed] leases that encompass other listed interests." *Id.* at 906. Concluding that the exhibit contained ambiguities, the court turned to the assignment's other terms and harmonized them as a whole. *Id.* The court noted that the granting clause included a broad statement that it was the intent of the assignment to convey to Citation "*all rights and interest now owned by [Shell] . . . regardless of whether same may be incorrectly described or omitted from Exhibit A*." *Id.* Ultimately, the court

---

[3]We have summarized the pertinent details for brevity. The supreme court provided a complete review of the background in its decision. *See Occidental Permian*, 689 S.W.3d at 902–04.

determined that the "assignment unambiguously conveyed all right, title, and interest that Shell owned in the leasehold estates listed in Column I of Exhibit A, without reserving portions of those interests to itself through further notations about specific tracts within those estates." *Id.* at 910. Here, the deed of trust executed by Douglas and Debora contains no such language to assist in ascertaining the accuracy of the Exhibit A property interest description.

B. *Applying Posse Energy, Ltd.*

The facts before us are distinguishable from both *Occidental* and *Piranha*. Here, Exhibit A attached to the deed of trust expressly and unambiguously limits the conveyance to the surface estate and excepts all mineral interests.[4] The case before us is more akin to *Posse Energy, Ltd. v. Parsley Energy, LP*, wherein a deed of trust conveyed:

> The oil, gas and/or mineral leasehold interests and estates and other interests which are described in Exhibit A attached hereto and made a part hereof, and all interest of Grantor in all other oil, gas and/or mineral interests with which any of the interests and estates described in Exhibit A are now or hereafter may be unitized, in whole or in part[.]

632 S.W.3d 677, 682–83 (Tex. App.—El Paso 2021, pet. denied). In *Posse Energy*, "Exhibit A" expressly stated that the conveyance was "limited to depths from below the stratigraphic equivalent of 7194 feet . . . and above 8900 feet." *Id.* at 683. Pursuant to a debt reconstruction, the grantor executed an amended deed of trust that collateralized "all the interests [Grantor] previously pledged in its oil and gas leases, 'together with all of the rights, hereditaments and appurtenances in anywise appertaining or belonging thereto,' including 'any interest hereafter acquired by [Grantor] therein[,]' and the wells and all products and proceeds of the property."

---

[4]The exceptions and/or reservations were the same as those enumerated in the partition deed; no new rights were reserved. *See Wenske*, 521 S.W.3d at 806; *Patrick*, 734 S.W.2d at 647 (Both a reservation and an exception are "*deducted from the thing granted*.").

*Id.* A buyer subsequently purchased the notes secured by the amended deed of trust through an acquisition agreement and the grantor conveyed the interests to settle the debt. *Id.* at 683–84. Further reversions and assignments occurred, each based off the amended deed of trust.[5] *Id.*

A dispute arose regarding the extent of the interests conveyed via the amended deed of trust. *Id.* at 684–85. Posse Energy contended that the acquisition agreement for the debt conveyed *all* the grantor's interests in the leases while Parsley Energy contended it conveyed only the shallow rights as described in Exhibit A. *Id.* at 684–85. Ultimately, the court concluded that the acquisition agreement, which referenced the prior deeds of trusts, note purchase agreement, and assignment, revealed an intent not to include deep rights. *Id.* at 690. This was true despite the prior assignment conveying "all rights," because "all" was subject to Exhibit A's limitation of the property description to shallow rights. *Id.* at 696. The court noted that it had previously said that "where an exhibit is referenced to describe the property being conveyed, it is the description of the interest in the *exhibit* which controls the scope of the grant, regardless of the breadth of the granting language." *Id.* at 693 (citing *Piranha Partners,* 596 S.W.3d at 747–48).

Following the reasoning provided in *Posse Energy*, we conclude that the deed of trust limits the conveyance to that which is described in Exhibit A, and that the phrase "together with all rights" limits whatever rights may exist as permitted by the description of the property as expressed in Exhibit A. *Id.* This construction harmonizes the entire document in a manner that does not result in any one term being rendered meaningless. *See Columbia Gas*, 940 S.W.2d at 589. Construing it, instead, to include the mineral rights in the non-partitioned mineral estate would render the phrase "surface estate only" and the accompanying "exceptions and/or

---

[5]We again summarize the facts for brevity. The court provided a complete discussion of the facts. *See Posse Energy*, 632 S.W.3d at 681–85.

reservations" meaningless. *See id.* Further, the conveyance documents at issue here are unlike those in *Piranha Partners* or *Occidental* that unambiguously identified the parties' intent to convey "all" rights in the mineral interest. *See Occidental Permian*, 689 S.W.3d at 909; *Piranha Partners*, 596 S.W.3d at 753.

C. *Construction Consistent with Surrounding Circumstances*

The surrounding circumstances also support our construction of the controlling instruments. *See Piranha Partners*, 596 S.W.3d at 749 (permitting courts to look to the surrounding circumstances to aid in the understanding of an unambiguous instrument's language and provide context into the meaning of the words employed) (citing *URI, Inc. v. Kleberg Cnty.*, 543 S.W.3d 755, 757–59 (Tex. 2018)). Although we do not have the benefit of the note on which the deed of trust was based, we do have the initial partition deed in the record before us. Just over one month before the deed of trust was executed, Douglas and Tony executed the partition deed, which partitioned only the surface estate.[6] The content and timing of the partition deed, together with the limiting language of the deed of trust's Exhibit A, evince an intent to only use the partitioned surface estate as collateral for the note. *See id.*

Our construction of the subject documents is also consistent with the conveyance language in the substitute trustee's deed through which Appellants obtained any interest in the SE/4. As previously stated, Douglas and Debora executed the original deed of trust, defaulted, and the trustee, then through a substitute trustee, conveyed that property to the Brad and Bruce Vaughn Partnership. The description of the property in the original deed of trust and the substitute

---

[6]But the partition deed granted Tony and Douglas the sole executive right to their respective quarter sections. Exhibit A of the deed of trust references "[a]ll outstanding ownership in the oil, gas and other minerals . . . as such outstanding interest [sic] are shown by the records of the County Clerk of Borden County, Texas," a reference that would include the partition deed filed with the Borden County Clerk July13, 2004. Exhibit A states that it is subject to the listed "exceptions and/or reservations."

13

trustee's deed to the Brad and Bruce Vaughn Partnership differ. While the property description of the Exhibit A attached to the original deed of trust conspicuously begins with the phrase "<u>SURFACE ESTATE ONLY,</u>" the substitute trustee's deed did not include that qualifier.[7] Instead, the substitute trustee's deed recites the SE/4 legal description followed by:

SUBJECT, HOWEVER, TO THE FOLLOWING:

1. Any discrepancies, conflicts, or shortages in area or boundary lines, or any encroachments or protrusions, or any overlapping of improvements.

2. Mineral reservation as described in Partition Deed dated July 8, 2004, between Tony Mac Isaacs and Douglas Lynn Isaacs, recorded in Volume 289, Page 416, Deed Records, Borden County, Texas.

3. Oil, Gas and Mineral Lease dated August 25, 1970, to Bernold M. Hanson and Roger D. Allen, recorded in Volume 136, Page 7, Deed Records, Borden County, Texas.

4. Oil, Gas and Mineral Lease dated February 7, 1974, to J. Travis Reeves, recorded in Volume 144, Page 363, Deed Records, Borden County, Texas.

5. Oil, Gas and Mineral Lease dated August 5, 1980, to Saxon Oil Company, recorded in Volume 166, Page 81, Deed Records, Borden County, Texas.

6. A 60' Roadway across SBL of E/2 of Section 8 in favor of Borden County as reflected in Volume 6, Page 443, Commissioner's Court

---

[7]While the first paragraph of the substitute trustee's deed references the original deed of trust, it does not appear to do so for the property description that it says will be "hereinafter described," but rather as a reference for "the notes and other indebtedness" listed therein. The first paragraph states, in part, the following:

certain property *hereinafter described for the purpose of securing and enforcing the payment to the United States of America of certain notes and other indebtedness as more fully described and provided for in said deed of trust* which is recorded in Volume 92, Page 243, Deed of Trust Records, Borden County, Texas, reference to which deed of trust and the record thereof is hereby made for all purposes[.] (emphasis added).

Minutes, Borden County, Texas, and as shown on Plat recorded in Volume 1, Page 25, Plat Records, Borden County, Texas.

7. Easement for water well and water pipeline as described in deed dated August 26, 1993, from Tony Mac Isaacs et ux. to Douglas Lynn Isaacs et ux., recorded in Volume 245, Page 695, Deed Records, Borden County, Texas,

8. Unpaid ad valorem taxes.

We conclude that the conveyance in the substitute trustee's deed, from which Appellants' property rights inure, clearly and unambiguously excepts mineral rights, leases, and easements from the sale at public auction. Paragraph 2 of the property description refers to the partition deed between Tony and Douglas that clearly preserves a joint undivided mineral interest. Here, the substitute trustee's deed is not a preprinted form that contains the language, "together with all rights (including rights to mining products, gravel, oil, gas, coal or other minerals) interests, easements, [and] fixtures" that is in the original deed of trust.[8]

It is significant that the "together with all rights" language in the deed of trust form follows *after* the reference to Exhibit A's "legal description" with its exceptions and/or reservations. We do not believe that the deed of trust preprinted form language was intended to contradict Exhibit A's "subject to" the "exceptions and/or reservations" language that was inserted; rather, the form's language was intended to be a catch-all for property *other than* exceptions and reservations that might be specified in an attached exhibit. Appellants' "interpretation of the preprinted language ignores and gives no effect to the typewritten [] provision[s]

---

[8]The partition deed and the substitute trustee's deed are part of the clerk's record but to the extent that these transactions would be considered extrinsic, "[w]e hasten to emphasize that the secondary analysis here involving the extrinsic evidence of transactions and history between the parties is not probative in the initial analytical process we described . . . [above] because it would go beyond the text. [T]hese transactions confirm our textual conclusion." *Van Dyke v. Navigator Group*, 668 S.W.3d 353, 367 n.9 (Tex. 2023) (emphasis omitted).

15

which the parties expressly inserted into the model form agreement." *See Anderson Energy Corp. v. Dominion Okla. Tex. Expl. & Prod., Inc.*, 469 S.W.3d 280, 290 (Tex. App.—San Antonio 2015, no pet.).[9]

Accordingly, we conclude the trial court did not err in denying Appellants' motion for summary judgment and granting Appellees' motion for summary judgment. Appellants' sole issue is overruled.

*This Court's Ruling*

We affirm the orders of the trial court.


W. BRUCE WILLIAMS

JUSTICE


March 27, 2025

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.

---

[9]"Even though the parties will often begin with a preprinted or standard form contract, they will sometimes make additions to or changes in their printed contract, adopting it to their particular transaction. Typically, such changes or additions will be handwritten but they may also be typed or stamped. . . . [I]n accord with the general rule that all parts of a contract are to be given effect, the courts must seek to reconcile inconsistencies between the changed or added terms and the printed matter. When, however, the printed contract provisions irreconcilably conflict with the provisions added by the parties, the added provisions will control." *Houston Expl. Co. v. Wellington Underwriting Agencies, Ltd.*, 352 S.W.3d 462, 472 n.50 (Tex. 2011) (quoting 11 RICHARD A. LORD, WILLISTON ON CONTRACTS § 32.13 (4th ed. 1999) (Written or typed matter prevails over printed matter) (footnotes omitted)).